UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENNIS E. CURTIS, on his own behalf and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| AETNA LIFE INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | OCTOBER 8, 2019 |

## **COMPLAINT**

Plaintiff Dennis E. Curtis brings this action, pursuant to the Employee Income Retirement Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on his own behalf and on behalf of all others similarly situated, to redress defendant Aetna Life Insurance Company's breach of its obligations to administer Mr. Curtis's and the other class members' claims for benefits under their ERISA group medical benefits plans in accordance with the plans' provisions.

## I.    **INTRODUCTION**

1. Mr. Curtis is a beneficiary of a group medical benefits plan established by Yale University ("Yale") for its employees and their beneficiaries. The plan (the "Yale Plan") is an employee benefit plan subject to ERISA. Claims administration for the Yale Plan is provided by defendant Aetna Life Insurance Company ("Aetna"), a Connecticut corporation that performs claims administration services for ERISA plans funded by third party employers (such as Yale), as well as for ERISA plans that Aetna or its affiliated companies directly insure.

2.  As is customary in all of the ERISA group medical benefits plans administered by
Aetna, the Yale Plan limits coverage to "medically necessary" health care expenses.  The Yale
Plan contains a standard definition of "medically necessary" that is substantially identical to the
definition of "medically necessary" in the other ERISA plans administered by Aetna.  Pursuant to
ERISA, Aetna is required to adhere to the plans' definition of "medically necessary" in making
claims benefits determinations and is not allowed to impose additional requirements or interpret
the definition of "medically necessary" in a manner inconsistent with its plain words.

3.  Aetna has violated this fundamental requirement of ERISA claims administration by
denying benefits to plan members based upon the definitions of "medically necessary" contained
in a series of internal Aetna Clinical Policy Bulletins ("CPBs") that are not a part of, or
incorporated in, any of the ERISA plans and that modify and limit, to plan members' detriment,
the plans' definition of "medically necessary."  The CPBs purport to set forth Aetna's view of
when medical services for physical therapy and other forms of rehabilitative therapy should be
deemed medically necessary, and Aetna denies benefits for such therapy services based upon the
definitions of medically necessary in the CPBs, even though the services qualify as medically
necessary pursuant to the definition of that term set forth in the plans.

4.  Aetna has, for example, denied coverage for physical therapy services prescribed, as
medically necessary, by Mr. Curtis's and other covered members' physicians, based on Aetna's
CPB #325, which restricts a finding that physical therapy services are medically necessary to
circumstances in which such services will "improve significantly" the patient's condition within
a 30-day period and excludes physical therapy services necessary to preserve or prevent
deterioration of physical function or as to which the time for expected improvement cannot be

2

predicted – limitations not contained in the plans' definition of medically necessary and contrary to accepted medical standards for when physical therapy is medically warranted.  Aetna has similarly denied benefits to covered plan members for occupational, speech, cognitive rehabilitation and other forms of therapy as not medically necessary based upon provisions of other CPBs that likewise either add requirements to or are not consistent with the plain words of the plans' definition of "medically necessary."

5.  Aetna has followed a uniform policy and practice of impermissibly denying claim benefits for such therapy services to the participants and beneficiaries in the ERISA plans it administers as not medically necessary – even though the medical services at issue are medically necessary (as defined by the plans), and so attested by the plan members' treating physicians – based on provisions in its internal CPBs inconsistent with the plans' definition of "medically necessary."

6.  Accordingly, Mr. Curtis brings this action, pursuant to 29 U.S.C. § 1132(a), on his own behalf and on behalf of other similarly-situated participants and beneficiaries in Aetna-administered ERISA-governed plans, including members of the plans who, like him, have been denied plan benefits for therapy services based on provisions of CPB #325 and other Aetna CPBs inconsistent with the plans' definition of "medically necessary."  Mr. Curtis seeks the equitable orders and injunctive relief set forth below, as authorized by 29 U.S.C. §§ 1132(a)(1)(B) & 1132(a)(3), for himself and other class members to redress Aetna's failure to adhere to the plain language of the plans in determining whether medical services are medically necessary.

## II.   **JURISDICTION**

7.   This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) (ERISA) and 28 U.S.C. § 1331 (federal question jurisdiction).

8.   Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) in that defendant is a resident of Connecticut; the ERISA plans at issue in this action are administered, and the breaches of such plans occurred, in this District; and a substantial part of the events or omissions giving rise to Mr. Curtis's and the proposed Class and Sub-Class claims alleged herein occurred in this District.

## III.   **PARTIES**

9.   Plaintiff Dennis E. Curtis is a resident of the State of Connecticut.

10.   Defendant Aetna Life Insurance Company is a corporation formed pursuant to the laws of the State of Connecticut and has its principal place of business in Connecticut.

## IV.   **STATEMENT OF THE FACTS**

11.   At all times mentioned herein, Mr. Curtis has been a beneficiary of the Yale Plan, a group medical benefits plan established by his wife's employer, Yale University, for Yale's employees and their beneficiaries.

12.   The Yale Plan is an employee benefit plan established pursuant and subject to ERISA.

13.   At all times mentioned herein, defendant Aetna has been in the business, *inter alia*, of providing claims administration services for ERISA group medical benefits plans self-funded (like the Yale Plan) by plan sponsors, as well as for ERISA plans that Aetna (or its affiliates) directly insure for the plan sponsors.  (The Yale Plan and the other ERISA group medical

benefits plans for which defendant Aetna provides claim administration services, as alleged

herein, are referred to collectively as the "Plans.")  In performing claims administration for the

numerous Plans it services, Aetna determines the benefits payable to tens of thousands of

participants and beneficiaries.

14.  Pursuant to the Yale Plan, Mr. Curtis and other Yale Plan participants and

beneficiaries have, at all times mentioned herein, been entitled to payment of health care

expenses covered by the Yale Plan, including expenses for physical therapy and other

rehabilitative therapy services, that are "medically necessary," as defined in the Yale Plan.

15.  At all times mentioned herein, the Yale Plan has provided that medical services are

"medically necessary" when "provided by a physician, or other health care provider, exercising

prudent clinical judgment, to a patient for the purpose of preventing, evaluating, diagnosing or

treating an illness, injury, disease or its symptoms" and when "the provision of the service or

supply [is]:

> (a) In accordance with generally accepted standards of medical practice;
>
> (b) Clinically appropriate, in terms of type, frequency, extent, site and duration and considered effective for the patient's illness, injury or disease;
>
> (c) Not primarily for the convenience of the patient, physician or other health care provider;
>
> (d) And not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

"For these purposes, 'generally accepted standards of medical practice' means standards

that are based on credible scientific evidence published in peer-reviewed medical literature

generally recognized by the relevant medical community, or otherwise consistent with physician

specialty society recommendations and the views of physicians practicing in relevant clinical areas and any other relevant factors."

16. At all times mentioned herein, all of the other ERISA-governed Plans for which defendant Aetna provides claims administration services have – like the Yale Plan – provided coverage for "medically necessary" health care expenses and have contained a definition of "medically necessary" substantially identical to the definition of "medically necessary" contained in the Yale Plan as set forth above.

17. The ERISA-governed Plans for which Aetna performs claims administration services (including the Yale Plan) do not limit "medically necessary" services to medical care that "significantly improves" a plan member's condition or to care based upon improvement within a specified time period; and proper (medically necessary) treatment of a patient can often involve medical services that act only to preserve a patient's condition from deterioration caused by an underlying illness, injury, disease or its symptoms; moreover, to the extent a goal of a particular therapy is improvement of a patient's condition, medically necessary treatment of uncertain duration may reasonably be required before improvement occurs.

18. In performing its claims administration services for of the Plans, Aetna is required to adhere to the Plans' definition of "medically necessary" and is not allowed to impose requirements on the Plans' definition of "medically necessary" not set forth in the Plans or interpret the Plans' definition of medically necessary in a manner inconsistent with its plain words.

6

19.  Notwithstanding Aetna's obligation to apply the Plans' definition of "medically necessary" as written in the Plans, Aetna has, at all times mentioned herein, followed a uniform and systematic policy and practice of impermissibly denying claim benefits to the Plans' members for the therapy services discussed below (*see* ¶ 21) based upon modifications and restrictions to the Plans' definition of "medically necessary" not set forth in the Plans.

20.  To carry out such wrongful policy and practice, defendant Aetna has prepared a series of internal Clinical Policy Bulletins ("CPBs") applicable to various therapy services covered, when medically necessary, by the Plans.  Aetna asserts that the CPBs "explain the medical ... services we may or may not cover" and contain "Aetna's determination of whether certain medical services or supplies are medically necessary."

21.  The CPBs impose additional requirements on the Plans' definition of "medically necessary" not set forth in the Plans and interpret the Plans' definition of "medically necessary" in a manner inconsistent with its plain words.  In particular, the following Aetna's CPBs provide (contrary to the definitions of "medically necessary" in the Plans) that therapy services prescribed by a plan member's treating physician will not be deemed medically necessary for claim benefits purposes unless they significantly improve a patient's condition within a specified period of time:

a.  Aetna's CPB # 325 (which was first internally prepared by Aetna on July 20, 1999 and last reaffirmed June 13, 2019) provides, in pertinent part, as follows:

> Aetna considers physical therapy medically necessary when this care is prescribed by a chiropractor, DO, MD, nurse practitioner, podiatrist or other health professional qualified to prescribe physical therapy according to State law in order to significantly improve, develop or restore physical functions lost or impaired as a result of a disease, injury or surgical procedure, and the following criteria are met:

• The member's participating physician or licensed health care practitioner has determined that the member's condition can improve significantly based on physical measures (e.g., active range of motion (AROM), strength, function or subjective report of pain level) within one month of the date that therapy begins or the therapy services proposed must be necessary for the establishment of a safe and effective maintenance program that will be performed by the member without ongoing skilled therapy services. These services must be proposed for the treatment of a specific illness or injury; and

• The PT services provided are intended to cover only episodes of therapy for situations where there must be a reasonable expectation that a member's condition will improve significantly in a reasonable and generally predictable period of time; and
....

Physical therapy in asymptomatic persons or in persons without an identifiable clinical condition is considered not medically necessary.

Physical therapy in persons whose condition is neither regressing nor improving is considered not medically necessary.

Once therapeutic benefit has been achieved, or a home exercise program could be used for further gains, continuing supervised physical therapy is not considered medically necessary.

Aetna uniformly denies payment to Plans' members for physical therapy based on CPB #325's non-plan limitations on when physical therapy will be considered medically necessary and will continue to do so on an ongoing basis unless remedied by this action.

b. Aetna's CPB # 243 (originally prepared May 21, 1998 and last reaffirmed May 7, 2019) similarly imposes a requirement that the therapy will not only maintain or prevent the deterioration of speech, but will "improve significantly" and is expected to do so within a "predictable period of time." Although the Plans contain no such limitations on when speech therapy is medically necessary, CPB #243 provides that "maintenance programs ... that preserve the member's present level of function and prevent regression of that function" are not medically

necessary.  It is Mr. Curtis's belief that Aetna uniformly has denied payment to Plans' members for speech therapy based on CPB #243's non-plan limitations on when speech therapy will be deemed medically necessary and will continue to do so on an ongoing basis unless remedied by this action.

   c.  Aetna's CPB # 0032 (originally prepared July 21, 1998 and reaffirmed May 22, 2019) severely limits coverage for pulmonary rehabilitation therapy as not medically necessary. As with the other Aetna CPBs for therapy services discussed herein, CPB #0032 provides that rehabilitation therapy is not medically necessary to maintain pulmonary function or prevent pulmonary deterioration, and precludes coverage where "there is a plateau in patient's progress toward goals, such that there is minimal or no potential for further substantial progress;" or "when there is no overall improvement" – limitations nowhere found in any of the Plans' definition of medically necessary or consistent with accepted standards of medical practice.  But CPB #0032 goes even further – it provides that pulmonary rehabilitation therapy is only medically necessary if the Plan member has no recent history of smoking (or has not quit smoking for at least 3 months) or when the Plan member is "motivated" to participate in the program.  Again, it is Mr. Curtis's belief that Aetna uniformly has denied payment to Plans' members for pulmonary rehabilitation therapy based on CPB #0032's non-plan limitations and will continue to do so on an ongoing basis unless remedied by this action.

   d.  Aetna's CPB # 0214 (originally prepared March 17, 1998 and reaffirmed June 5, 2019) likewise limits medically necessary cognitive rehabilitation therapy to treatment "expected to produce significant cognitive improvement," again excluding therapy to maintain and preserve cognitive function or prevent cognitive deterioration, even though the Plans'

definition of medically necessary authorizes no such limitations.  Again, Mr. Curtis believes that
Aetna uniformly has denied payment to Plans' members for cognitive rehabilitation therapy
based on CPB #00214's non-plan limitations and will continue to do so on an ongoing basis
unless remedied by this action.

   e.  *See also* Aetna CPB #0250 [prepared May 26, 1998; reaffirmed June 11, 2019]
(Occupational Therapy only medically necessary where expected that member's condition will
"improve significantly" and "measurably" and not medically necessary to maintain condition or
absent "an identifiable clinical condition"); Aetna CPB # 0640 [prepared September 17, 2002;
reaffirmed September 13, 2019] (Voice Therapy only medically necessary to improve condition;
not medically necessary to maintain voice function).  Again, Mr. Curtis believes that Aetna
uniformly has denied payment to Plans' members for the services covered by these CPBs based
on the non-plan limitations on "medically necessary" in these CPBs and will continue to do so on
an ongoing basis unless remedied by this action.

   22.  Aetna's CPBs described above are not part of, or incorporated in, the Plans.  While
Aetna may be entitled to rely on its CPBs in determining benefits, pursuant to its insurance
contracts, in plans not subject to ERISA (*i.e.*, where Aetna has a *contractual* right to do so),
Aetna may not rely upon provisions in its CPBs that conflict with the Plans' provisions to deny
benefits for medical services covered by the Plans.

   23.  At all times mentioned herein, defendant Aetna has based its determinations of
whether health care expenses for the therapy services described above for which participants and
beneficiaries seek benefits under the Plans are medically necessary on the provisions of Aetna's
CPBs, rather than on the Plans' definition of medically necessary, and has denied payment of

benefits for such services to Mr. Curtis and the Plans' other members based on the CPBs'

definitions of "medically necessary" even when the medical services at issue fully satisfy the

Plans' definition of "medical necessary."

## AETNA'S DENIAL OF MR. CURTIS'S CLAIMS

24.  Thus, for example, defendant Aetna has repeatedly denied Mr. Curtis coverage for

physical therapy ordered by his treating physicians and certified by them as medically necessary

on the ground that such therapy was not medically necessary pursuant to Aetna's CPB #325

because it would not significantly improve Mr. Curtis's physical condition within a specified

duration.

25.  Despite generally-accepted standards of care recognizing that physical therapy may

be medically necessary for patients to maintain and prevent deterioration of a patient's condition,

even if such condition may not be expected to improve, Aetna's CPB #325 (as set forth above in

¶ 21a) precludes a determination that physical therapy is medically necessary for patients who

will not "improve significantly" and who will not do so within one month of the start of service.

26.  Aetna uniformly applies CPB #325 when making determinations as to whether

physical therapy is medically necessary and benefits payable to participants and beneficiaries in

the Yale Plan and the other Plans for which Aetna provides claims administration services.

27.  In July 2016, Mr. Curtis began receiving physical therapy treatment, pursuant to his

treating physicians' orders and prescriptions, to treat balance, strength and mobility issues caused

by neurological and other conditions and surgical procedures.  Aetna initially approved coverage

and benefits for Mr. Curtis's physical therapy, but in September 2017, Aetna began denying

coverage on the ground that, pursuant to CPB #325, physical therapy was no longer "medically

necessary." In response to Mr. Curtis's appeals, Aetna ultimately reversed its denials and approved payment of benefits for Mr. Curtis's physical therapy through April 2018.

28. Mr. Curtis's need for physical therapy did not abate or change in April 2018, and from April 2018 to date, Mr. Curtis's treating physicians have continued to prescribe physical therapy as medically necessary to treat his ongoing balance, strength and mobility issues.

29. Aetna has denied coverage for Mr. Curtis's physical therapy from April 2018 to date, notwithstanding his submission of documentation from his treating physicians attesting to the medical need and appropriateness of such therapy for him, in full satisfaction of the requirements set forth in the Yale Plan for establishing that the physical therapy is medically necessary.

30. Mr. Curtis has appealed Aetna's denial of coverage for his physical therapy (as provided by the Yale Plan) to Aetna and to a third party reviewing entity, but his appeals have been denied on the ground that the physical therapy did not meet the requirements necessary to establish the treatment was medically necessary set forth in Aetna's internal policy, CPB #325.

31. As a result of defendant Aetna's impermissible policy and practice of denying benefits for therapy services based on non-plan provisions in its CPBs, Mr. Curtis has been wrongly denied benefits under the Yale Plan for medically necessary physical therapy ordered by his physicians.

32. Mr. Curtis has an ongoing need for physical therapy services. Absent remedial relief herein, Aetna will certainly continue to deny his claims for benefits under the Yale Plan to pay for such medically necessary services based on the provisions of Aetna's CPB #325.

## CLASS ACTION ALLEGATIONS

33.  Mr. Curtis brings this action, pursuant to Fed. R. Civ. P. 23, on his own behalf and on behalf of the following Class and Sub-Class of persons similarly situated to him:

      a.  Class 1 is defined to include:

> All participants or beneficiaries in the ERISA-governed group medical benefit Plans (both for self-funded employers or as a insurer, directly or through its affiliates) as to which Aetna provides claims administration services.

      b.  Sub-Class 1a is defined to include:

> All participants or beneficiaries in the ERISA-governed group medical benefit Plans (both for self-funded employers or as a insurer, directly or through its affiliates) as to which Aetna provides claims administration services, who, during the relevant limitations period, have been denied benefits for therapy services covered by their Plans, as not medically necessary, based on requirements for establishing the therapy was medically necessary contained in Aetna's CPB #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents  inconsistent with the Plans' definition of "medical necessary."

34.  In support of his claims for class-wide relief, Mr Curtis submits the following:

      a.  The requirements for establishing that a medical service is "medically necessary" contained in the Yale Plan and in the other ERISA-governed Plans for which Aetna provides claim administration services are substantially identical.

      b.  Aetna follows a uniform and systematic policy and practice of relying on the requirements set forth in the internal CPBs described above for establishing that medical services for physical therapy and other forms of rehabilitative therapy are medically necessary in determining whether claims for benefits for such services submitted by participants or beneficiaries pursuant to their Plans are medically necessary.

13

c. The CPBs described above uniformly contain requirements for establishing that the pertinent therapy service is medically necessary that are not contained in the Plans, that impose additional requirements not contained in the Plans, and that misapply the plain meaning of the definition of medically necessary in the Plans, to the detriment of the Plans' members.

d. Aetna's denials of Mr. Curtis's and the other Plans' members claims for benefits for such therapy services were based on the definitions of "medically necessary" contained in Aetna's CPBs even though such definitions imposed additional requirements or interpreted the definition of "medically necessary" in the Plans in a manner inconsistent with the Plans' plain words.

e. Mr. Curtis and other Plan members were improperly denied benefits for medically necessary therapy services that they were entitled to receive pursuant to their Plans.

35. The Class and Sub-Class defined above meet all requirements of Fed. R. Civ. P. 23(a) and 23(b)(1) & (2). In particular:

a. The members of each of the proposed classes are so numerous that joinder of all members is impractical. While the precise number of members in the Class and Sub-Class is, prior to discovery, known only to defendant, Aetna provides claims administration services for ERISA-governed group medical plans covering tens of thousands (if not more) plan participants and beneficiaries, and thousands of such Plans' members are likely affected, on a daily and ongoing basis, by Aetna's application of the definitions of "medically necessary" contained in the CPBs described above, instead of the Plans' definition. With respect to Sub-Class 1a, the therapy treatments at issue are so widespread that, at a minimum, requests for coverage numbering in the thousands (within the applicable limitations period) are virtually certain to have

been submitted to and denied by Aetna as not medically necessary pursuant to the CPBs described above.

  b. There exist issues of fact and law common to all members of the Class and Sub-Class, the most obvious and important of which are:

> • whether Aetna's CPBs described above impose requirements for determining whether the various forms of therapy addressed in the CPBs are medically necessary not set forth in the Plans' definition or interpret the Plans' definition of "medically necessary" in a manner inconsistent with its plain words;

> • whether Aetna follows a uniform policy and practice of denying benefits to members of the Plans based on the definition of "medically necessary" contained in the CPBs described above;

> • whether Aetna denies benefits to members of the Plans based on the definition of "medically necessary" contained in the CPBs described above even though the medical services for which benefits are sought are "medically necessary," as defined by the Plans;

> • whether Aetna has violated the provisions of ERISA by denying benefits to members of the Plans based on the definitions of medically necessary in the CPBs described above.

  c. Mr. Curtis's claims are typical of the claims of the Class and Sub-Class Members because all of the claims are based on Aetna's (alleged) uniform policy and practice of improperly determining whether medical services are medically necessary (and benefits payable) for physical therapy and other forms of rehabilitative therapy based on definitions of medically necessary in Aetna's CPBs inconsistent with the definition of "medically necessary" in the Plans.

  d. Mr. Curtis will fairly and adequately protect the interests of the members of the Class and Sub-Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and the prosecution of ERISA

claims, and has no interests antagonistic to or in conflict with those of the Class and Sub-Class. Mr. Curtis's attorneys are experienced and capable in the field of civil litigation, have successfully represented claimants in other litigation, including class action litigation, and will actively pursue and be responsible for his claims and those of the Class and Sub-Class herein.

e.   The prosecution of separate actions by individual members of the proposed Class and Sub-Class would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Aetna.

f.   By applying a uniform internal policy that impermissibly imposes additional requirements for coverage for therapy services, Aetna has acted and refused to act on grounds that apply generally to the Class and Sub-Class.

g.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it would be impossible for the Class and Sub-Class Members to redress individually the harm done to them given that the unpaid benefits denied each of the Sub-Class members are small relative to the expense and burden of individual litigation.

## VI.   CLAIMS FOR RELIEF

### A.   FIRST CLAIM FOR RELIEF  (on behalf of Mr. Curtis and the Class)

36.   Paragraphs 1-35 of this Complaint are incorporated herein as paragraph 36 as if fully set forth.

37.   In performing its claims administration services for the Yale Plan and the other ERISA-governed group medical benefits Plans described above, defendant Aetna has violated and likely will in the future continue to violate its obligations to Mr. Curtis and the Class

Members pursuant to ERISA to comply with the Plans' provisions by improperly denying benefits to Mr. Curtis and the Class Members based on definitions of "medically necessary" inconsistent with the Plans' provisions.

38.  Mr. Curtis and the Class Members are entitled to the following relief pursuant to 29 U.S.C. § 1132(a)(1)(B):

     a.  entry of an Order clarifying that their rights to benefits under their Plans for "medically necessary" medical services are to be determined in accordance with their Plans' definition of medically necessary, not on the basis of inconsistent provisions in Aetna's non-plan CPBs or other non-plan documents;

     b.  entry of an Order permanently enjoining Aetna from denying the Plans' members benefits as not medically necessary on the basis of provisions in Aetna's Clinical Policy Bulletins or other non-plan documents not contained in their Plans' definition of "medical necessary" or resulting in an interpretation of such definition in a manner inconsistent with the plain language of the Plans.

**B.**    **SECOND CLAIM FOR RELIEF**  **(on behalf of Mr. Curtis and the Sub-Class)**

42.  Paragraphs 1-35 of this Complaint are incorporated herein as paragraph 42 as if fully set forth.

43.  In performing its claims administration services for the Yale Plan and the other ERISA-governed group medical benefits Plans described above, defendant Aetna has violated and likely will continue to violate its obligations to Mr. Curtis and the Sub-Class Members pursuant to ERISA to comply with the Plans' provisions by improperly denying benefits for

medically necessary therapy services to Mr. Curtis and the Sub-Class Members based on the definition of medically necessary contained in Aetna's CPBs #325, 243, 0032, 0214, 0250 and 0640 inconsistent with the Plans' provisions.

44.   Mr. Curtis and the Sub-Class Members are entitled to the following relief pursuant to 29 U.S.C. §§ 1132(a)(1)(B) & 1132(a)(3):

a.  entry of an Order clarifying that the determination of whether therapy services provided to them are medically necessary is to be based on the definition of medically necessary in their Plans, not on the definitions of medically necessary set forth in Aetna's CPBs #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents;

b.  entry of an Order declaring that Aetna has violated their rights under ERISA to determination of whether therapy services provided to them are medically necessary under their Plans by relying on the definitions of medically necessary in Aetna's CPBs #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents, instead of the definition of medically necessary in their Plans, to deny their claims for benefits;

c.  entry of an Order permanently enjoining Aetna from denying members of the Plans benefits for therapy services, as not medically necessary, on the basis of provisions in Aetna's CPBs #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents not contained in their Plans' definition of "medical necessary" or resulting in an interpretation of such definition in a manner inconsistent with the plain language of the Plans;

d.  entry of an Order requiring Aetna to reprocess and redetermine Mr. Curtis's and the Sub-Class Members' entitlement to benefits for therapy services pursuant to their Plans without regard to non-plan limitations on or modifications to the definition of medically

necessary in their Plans or interpretations of the definition inconsistent with its plain language derived from Aetna's CPBs #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents.

45.  Aetna has benefitted financially from its wrongful denials of Mr. Curtis's and the Sub-Class Members' claims for benefits for therapy services in that (i) with respect to the ERISA-governed Plans that it or its affiliates directly insure, Aetna limits its financial payments for medically necessary therapy services; and (ii) with respect to its provision of claim administration services for self-funded ERISA-governed Plans, its ability to limit the plan sponsors' payments for medically necessary therapy services increases the value of Aetna's services and its ability to collect increased administrative services fees and obtain further business.

46.  Defendant Aetna has been unjustly enriched, at the expense of Mr. Curtis and the Sub-Class Members, by its breach of its ERISA obligations to Mr. Curtis and the Sub-Class Members.

47.  Mr. Curtis and the Sub-Class Members are entitled, pursuant to 29 U.S.C. §§ 1132(a)(1)(B) & 1132(a)(3), to entry of an Order requiring Aetna to disgorge all financial benefits it has obtained as a result of its violations of its aforesaid obligations under ERISA.

## V.   PRAYER FOR RELIEF

Wherefore, plaintiff prays the following relief:

1. Entry of an Order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1) & (2), in accordance with the proposed Class and Sub-Class definitions set forth in this Complaint, appointing plaintiff as Class Representative for the proposed Class and Sub-Class, and appointing Mr. Curtis's attorneys as Lead Counsel for the Class and Sub-Class.

### As to Mr. Curtis and the Class

2. Entry of an Order, pursuant to 29 U.S.C. § 1132(a)(1)(B), clarifying that Mr. Curtis and the Class Members are, in the future, entitled to a determination of whether medical services for which they seek benefits pursuant to their Plans are "medically necessary" in accordance with their Plans' provisions and without regard to non-plan limitations or modifications of the Plans' definition of "medically necessary" or interpretations of the Plans' definition of "medically necessary" in a manner inconsistent with the Plans' plain language derived from the provisions of Aetna's Clinical Policy Bulletins or other non-plan documents.

3. Entry of an Order, pursuant to 29 U.S.C. § 1132(a)(3) or 29 U.S.C. § 1132(a)(3), permanently enjoining Aetna from conditioning payment of benefits to Mr. Curtis and Class Members for medical services, based on limitations on the determination of whether such services are "medically necessary" not set forth in their Plans or based on interpretations of the Plans' definition of "medically necessary" in a manner inconsistent with the Plans' plain language derived from the provisions of Aetna's Clinical Policy Bulletins or other non-plan documents.

**As to Mr. Curtis and the Sub-Class**

4.  Entry of an Order, pursuant to 29 U.S.C. § 1132(a)(1)(B), declaring that Aetna has violated its obligations to Mr. Curtis and the Sub-Class Members pursuant to ERISA by denying their claims for benefits under their Plans for therapy services as not "medically necessary" on the basis of non-plan limitations or modifications of the Plans' definition of "medically necessary" or interpretations of the Plans' definition of "medically necessary" in a manner inconsistent with the Plans' plain language derived from the provisions of Aetna's Clinical Policy Bulletins #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents.

5.  Entry of an Order, pursuant to 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3), clarifying that Mr. Curtis and the Sub-Class Members are, in the future, entitled to a determination of whether their therapy services are "medically necessary" in accordance with their Plans' provisions and without regard to non-plan limitations or modifications of the Plans' definition of "medically necessary" or interpretations of the Plans' definition of "medically necessary" in a manner inconsistent with the Plans' plain language derived from the provisions of Aetna's Clinical Policy Bulletins or other non-plan documents.

6.  Entry of an Order, pursuant to 29 U.S.C. § 1132(a)(3) or 29 U.S.C. § 1132(a)(3), permanently enjoining Aetna from conditioning payment of benefits to Mr. Curtis and the Sub-Class Members pursuant to their Plans for therapy services, based on limitations on the determination of whether such services are "medically necessary" not set forth in the Plans or based on interpretations of the Plans' definition of "medically necessary" in a manner inconsistent with the plans' plain language derived from the provisions of Aetna's Clinical Policy Bulletins or other non-plan documents.

21

7.  Entry of an Order, pursuant to 29 U.S.C. § 1132(a)(1)(B) or § 1132(a)(3), directing Aetna to reprocess and redetermine Mr. Curtis's and all Sub-Class Members' claims to benefits for therapy services pursuant to their Plans denied by Aetna (during the applicable limitations period) as not "medically necessary" on the basis of non-plan limitations or modifications of the Plans' definition of "medically necessary" or on interpretations of the Plans' definition of "medically necessary" in a manner inconsistent with the Plans' plain language derived from the provisions of Aetna's Clinical Policy Bulletin #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents.

8.  Entry of an Order, pursuant to 29 U.S.C. § 1132(a)(3) or 29 U.S.C. § 1132(a)(3), requiring Aetna to disgorge all financial gain realized as a result of Aetna's wrongful conduct in denying Mr. Curtis's and the Sub-Class Members' claims for therapy benefits pursuant to the provisions of their Plans as not medically necessary based on non-plan provisions of Aetna's Clinical Policy Bulletin #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents .

<u>**As to Both Claims for Relief**</u>

9.  Entry of an Order awarding attorneys' fees and costs of litigating this action to Mr. Curtis's counsel, as provided in 29 U.S.C. § 1132(g)(1).

10.  Such other relief as the Court deems appropriate.

Dated at Stamford, Connecticut this 8th day of October, 2019.

PLAINTIFF DENNIS E. CURTIS, ON HIS OWN
BEHALF AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED


BY:  /s/ David S. Golub
        DAVID S. GOLUB (ct00145)
        SARAH A. RICCIARDI (ct30300)
        SILVER GOLUB & TEITELL LLP
        184 ATLANTIC STREET
        STAMFORD, CT  06901
        Tel.  (203) 325-4491
        Fac.  (203) 325-3769
        Email:  dgolub@sgtlaw.com
                sricciardi@sgtlaw.com