## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENNIS E. CURTIS, on his own behalf and on behalf of all others similarly situated, *Plaintiffs*, v. AETNA LIFE INSURANCE COMPANY, *Defendant*. | No. 3:19-cv-01579 |

### RULING ON MOTION TO DISMISS

Plaintiff Dennis E. Curtis ("Curtis"), on his own behalf and on behalf of all others similarly situated, brings this action against Aetna Life Insurance Company ("Aetna") alleging that Aetna has violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by failing to administer Curtis's and the putative class members' claims for benefits under their ERISA group medical benefits plans in accordance with the plans' provisions. Compl., ECF No. 28. Specifically, Curtis alleges that Aetna has violated ERISA by denying benefits to plan members based upon definitions of "medically necessary" contained in a series of internal Aetna Clinical Policy Bulletins that are not a part of, or incorporated in, any of the ERISA plans and that modify and limit, to plan members' detriment, the plans' definition of "medically necessary." *Id.*; ECF No. 38 at 6-7. Aetna filed a motion to dismiss, seeking to dismiss the complaint in its entirety. ECF No. 33. For the reasons set forth herein, the defendant's motion to dismiss is GRANTED.

## I.    BACKGROUND

The following facts are drawn from Curtis's operative complaint and the exhibits attached to Aetna's motion, which include the relevant ERISA plan and the principal Clinical

Policy Bulletin discussed in the complaint.[1]  These facts are accepted as true for the purpose of this motion.

Curtis, a resident of the State of Connecticut, is a beneficiary of a group medical benefits plan established by his wife's employer, Yale University ("Yale"), for its employees and their beneficiaries.  The plan (the "Yale Plan") is an employee benefit plan subject to ERISA.  Claims administration for the Yale Plan is provided by Aetna, a Connecticut corporation that performs claims administration services for ERISA plans funded by third party employers such as Yale, as well as for ERISA plans that Aetna or its affiliated companies directly insure.  ECF No. 28 ¶¶ 1, 9-13.[2]

The Yale Plan, as is customary in all of the ERISA group medical benefits plans administered by Aetna, limits coverage to "medically necessary" health care expenses.  The Yale Plan contains a standard definition of "medically necessary" that is substantially identical to the definition of "medically necessary" in the other ERISA plans administered by Aetna.  *Id*. ¶¶ 2, 16.  Aetna maintains a series of internal Aetna Clinical Policy Bulletins ("CPBs") that are not a part of, or incorporated in, any of the Plans and that modify and limit the Plans' definition of "medically necessary."  *Id*. ¶ 3.  The CPBs purport to set forth Aetna's view of when medical

---

[1] Because these documents are discussed in and relied on in the operative complaint, I may consider them in deciding Aetna's motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotation marks omitted)); *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir. 1998) (On motion to dismiss, court may consider "documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."); *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim . . .").

[2] For ease of reference in this ruling, I use the term the "Plans" to refer collectively to the Yale Plan and the other ERISA group medical benefits plans for which Aetna provides claim administration services and as to which Curtis makes allegations in this case.

services for physical therapy and other forms of rehabilitative therapy should be deemed medically necessary.  *Id.*

Aetna denies benefits for such therapy services based upon the definitions of medically necessary in the CPBs, even though the services qualify as medically necessary pursuant to the definition of that term set forth in the Plans.  *Id.*  Specifically, Aetna has denied coverage for physical therapy services prescribed by Curtis's and other covered members' physicians, based on Aetna's CPB #325, which restricts a finding that physical therapy services are medically necessary to circumstances in which such services will "improve significantly" the patient's condition within a 30-day period and excludes physical therapy services necessary to preserve or prevent deterioration of physical function or as to which the time for expected improvement cannot be predicted.  These limitations are not contained in the Plans' definition of medically necessary and are contrary to accepted medical standards for when physical therapy is medically warranted.  Aetna has similarly denied benefits to covered plan members for occupational, speech, cognitive rehabilitation and other forms of therapy as not medically necessary based upon provisions of other CPBs that likewise either add requirements to or are not consistent with the plain words of the Plans' definition of "medically necessary."  *Id.* ¶ 4.

### A.    Dennis E. Curtis

In July 2016, Curtis began receiving physical therapy treatment, pursuant to his treating physicians' orders and prescriptions, to treat balance, strength and mobility issues caused by neurological and other conditions and surgical procedures.  Aetna initially approved coverage and benefits for Curtis's physical therapy, but in September 2017, Aetna began denying coverage on the ground that, pursuant to CPB #325, physical therapy was no longer "medically necessary."  In response to Curtis's appeals, Aetna ultimately reversed its denials and approved

payment of benefits for Curtis's physical therapy through April 2018, "thereby [according to Curtis] necessarily establishing that the physical therapy services ordered for . . . Curtis through April 2018 constituted covered benefits for eligible health services pursuant to the Yale Plan." *Id*. ¶ 28.[3]  The medical need and purpose of the physical therapy ordered for Curtis by his treating physicians prior to April 2018 did not abate or change in April 2018, and from April 2018 to the filing of the operative complaint, Curtis's treating physicians have continued to prescribe physical therapy as medically necessary to treat his ongoing balance, strength and mobility issues.  *Id*. ¶ 29.

Aetna denied coverage for Curtis's physical therapy from April 2018 through November 17, 2019 as not medically necessary, notwithstanding his submission of documentation from his treating physicians attesting to the medical need and appropriateness of such therapy for him, in full satisfaction of the requirements set forth in the Yale Plan for establishing that the physical therapy is medically necessary.  *Id*. ¶ 30.  Curtis appealed Aetna's denial of post-April 2018 coverage for his physical therapy to Aetna and to a third party reviewing entity (as provided by the Yale Plan), but his appeals were denied on the ground that the physical therapy did not meet the requirements necessary to establish that the treatment was medically necessary as set forth in Aetna's internal policy, CPB #325.  *Id*. ¶ 31.  The medical necessity, purpose and likely effect of the physical therapy ordered for Curtis by his treating physicians has not abated or changed since April 2018.  *Id*. ¶ 32.  On January 14, 2020, Aetna advised Curtis that it had determined that the physical therapy services ordered by his physicians from November 18, 2019 through January 2, 2020 and ten additional sessions beginning on January 3, 2020 were eligible health services

---

[3] As I discuss in greater detail below, Curtis's allegation that the benefit he seeks is a "covered benefit" and an "eligible health service" under the Yale Plan is *not* a factual allegation taken as true for the purpose of this motion. *See infra* Part III.B.

under the Yale Plan. *Id.* ¶ 33. The medical necessity, purpose and likely effect of the physical therapy ordered for Curtis by his treating physicians after November 17, 2019 is identical to the medical necessity, purpose and likely effect of the physical therapy ordered for Curtis from April 2018 through November 17, 2019. *Id.* ¶ 34. Curtis alleges that the January 14, 2020 determination that his physical therapy services are eligible for benefits pursuant to the Yale Plan confirms that such services are covered, eligible health services under the Yale Plan as to which he is entitled to benefits. *Id.*

Aetna has denied Curtis coverage for physical therapy ordered by his treating physicians and certified by them as medically necessary on the ground that such therapy was not medically necessary pursuant to Aetna's CPB #325 because it would not "improve significantly" Curtis's physical condition within a specified duration, i.e., within one month of the start of service. *Id.* ¶¶ 25-26. Specifically, Curtis alleges that he has been denied covered benefits under the Yale Plan for physical therapy services from April 2018 through November 2019. *Id.* ¶ 35. Curtis has an ongoing need for physical therapy services. *Id.* ¶ 36.

**B.   The Putative Class**

Curtis brings this action, pursuant to Fed. R. Civ. P. 23, on his own behalf and on behalf of the following Class and Sub-Class of persons similarly situated to him:

a.   Class 1 is defined to include:

All participants or beneficiaries in the ERISA-governed group medical benefit Plans (both for self-funded employers or as a[n] insurer, directly or through its affiliates) as to which Aetna provides claims administration services.

b.   Sub-Class 1a is defined to include:

All participants or beneficiaries in the ERISA-governed group medical benefit Plans (both for self-funded employers or as a[n] insurer, directly or through its affiliates) as to which Aetna provides claims administration services, who, during the relevant limitations period, have been denied benefits for therapy services

> covered by their Plans, as not medically necessary, based on requirements for establishing the therapy was medically necessary contained in Aetna's CPB #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents inconsistent with the Plans' definition of "medical necessary."

*Id.* ¶ 37.

The requirements for establishing that a medical service is "medically necessary" contained in the Plans are substantially identical. *Id.* ¶ 38. Aetna follows a uniform and systematic policy and practice of relying on the requirements set forth in the internal CPBs described above for establishing that medical services for physical therapy and other forms of rehabilitative therapy are medically necessary in determining whether claims for benefits for such services submitted by participants or beneficiaries pursuant to their Plans are medically necessary. *Id.* The CPBs uniformly contain requirements for establishing medical necessity that are not contained in the Plans, that impose additional requirements not contained in the Plans, and that misapply the plain meaning of the definition of medically necessary in the Plans, to the detriment of the Plans' members. *Id.*

### C. The Yale Plan

The Yale Plan, which is self-funded, describes the benefits it covers and states on the first page that "for all the details – and this is very important – you need to read this entire booklet and the schedule of benefits." ECF No. 33-1 at 7. The Yale Plan explains the terms and conditions of coverage and plan operation in various sections, including (as relevant here): what the plan does and how it works, the medical necessity and precertification requirements, eligible health services, exclusions from coverage, who pays for services, and a glossary of key plan terms. ECF No. 33-1 at 5-6.

The Yale Plan provides "covered benefits," which are "eligible health services" for which the plan has the obligation to pay. It does not pay for benefits that are excluded or otherwise not

covered. *Id.* at 7. More specifically, a covered benefit is defined as "[e]ligible health services that meet the requirements for coverage under the terms of this plan, including: 1. They are medically necessary. 2. You received precertification, if required." *Id.* at 88. "Eligible health services" are defined as "[t]he health care services and supplies and prescription drugs listed in the *Eligible health services under your plan* section and not carved out or limited in the *exclusions* section or in the schedule of benefits." *Id.* at 89 (italics in original). The Yale Plan defines "medically necessary/medical necessity," as follows:

> Health care services that a provider exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
>
> •      In accordance with generally accepted standards of medical practice[;]
>
> •      Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease[;]
>
> •      Not primarily for the convenience of the patient, physician, or other health care provider[; and]
>
> •      Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.
>
> Generally accepted standards of medical practice means:
>
> •      Standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community.
>
> •      Consistent with the standards set forth in policy issues involving clinical judgment.

*Id.* at 92; ECF No. 28 ¶ 15.

The section describing eligible health services begins by noting that "[y]our plan covers many kinds of health care services and supplies, such as physician care and hospital stays. But sometimes those services are not covered at all or are covered only up to a limit." ECF No. 33-1

at 16.  This section includes a description of a broad array of health services, *id.* at 16-23, specific conditions, *id.* at 24-33, and specific therapies and tests, *id.* at 34-37.  Physical therapy is listed as an eligible health service under "Hospital care" (as either inpatient or outpatient), *id.* at 21, and is addressed with greater specificity as a sub-category of both "[s]hort-term rehabilitative services" and "[h]abilitation services" (both of which are listed in the "specific therapies and tests" section).  *Id.* at 35-36.  Short-term rehabilitation services "help you restore or develop skills and functioning for daily living. . . . [and] have to follow a specific treatment plan."  *Id.* at 35.  Eligible health services "include short-term rehabilitation services your physician prescribes."  *Id.* at 35.  Outpatient physical therapy is an eligible health service under short-term rehabilitation services, "but only if it is expected to significantly improve or restore physical functions lost as a result of an acute illness, injury or surgical procedure."  *Id.* at 36.  The Yale Plan also covers "Habilitation therapy services," which are "services that help you keep, learn, or improve skills and functioning for daily living (e.g. therapy for a child who isn't walking or talking at the expected age)."  *Id.*  Like short-term rehabilitation services, habilitation therapy must be prescribed by a physician to be an eligible health service and must follow a specific treatment plan.  *Id.*  Outpatient physical therapy ("except for services provided in an educational or training setting") is an eligible health service under habilitation therapy services "if it is expected to develop any impaired function."  *Id.*

The "Exclusions" section of the Yale Plan sets forth "General exclusions" that describe "what general services and supplies are not covered under the entire plan" and "Exclusions under specific types of care" that describe "what services and supplies are exceptions under specific types of care or conditions."  *Id.* at 47.  As relevant here, the Yale Plan carves out, as a general exclusion, "Maintenance care"—defined as "[c]are made up of services and supplies that

maintain, rather than improve, a level of physical or mental function, except for habilitation therapy services", *id.* at 49—and "Strength and performance"—defined as "[s]ervices, devices and supplies such as drugs or preparations designed primarily for enhancing your: Strength[,] Physical condition[,] Endurance[, and] Physical performance", *id.* at 51.  In addition, the Yale Plan excludes from short-term rehabilitation services (with an exception not applicable here) "therapies [including physical therapy] to treat delays in development and/or chronic conditions."  *Id.* at 55.

### D.      Aetna's Clinical Policy Bulletins[4]

The CPBs are applicable to various therapy services that are covered, when medically necessary, by the Plans.  ECF No. 28 ¶ 20.  Aetna asserts that the CPBs "explain the medical . . . services we may or may not cover" and contain "Aetna's determination of whether certain medical services or supplies are medically necessary."  *Id.*

The CPBs impose additional requirements on the Plans' definition of "medically necessary" not set forth in the Plans and interpret the Plans' definition of "medically necessary" in a manner inconsistent with their plain words.  *Id.* ¶ 21.  Aetna has based its determinations of whether health care expenses for physical therapy, speech therapy, pulmonary rehabilitation therapy, cognitive rehabilitation therapy, and occupational therapy are medically necessary on the provisions of Aetna's CPBs, rather than on the Plans' definition of medically necessary. Aetna has denied payment of benefits for such services to Curtis and the Plans' other members based on the CPBs' definitions of "medically necessary" even when the medical services at issue fully satisfy the Plans' definition of "medical necessary" and, Curtis alleges, are otherwise

---

[4] Because the CPBs, including CPB #325, are referenced and quoted throughout the Complaint, and because CPB #325 has been submitted by Aetna along with its motion to dismiss, I may consider CPB #325 in its entirety.  *See supra* note 1.

covered benefits pursuant to the Plans. *Id.* ¶ 23. In particular, the Aetna CPBs applicable to the types of therapy listed above provide that therapy services prescribed by a plan member's treating physician will not be deemed medically necessary for claim benefits purposes unless they significantly improve a patient's condition within a specified period of time.

As relevant to Curtis, Aetna's CPB # 325 (which was first internally prepared by Aetna on July 20, 1999 and last reaffirmed June 13, 2019) provides, in pertinent part, as follows:

> Aetna considers physical therapy medically necessary when this care is prescribed by a chiropractor, DO, MD, nurse practitioner, podiatrist or other health professional qualified to prescribe physical therapy [("PT")] according to State law in order to significantly improve, develop or restore physical functions lost or impaired as a result of a disease, injury or surgical procedure, and the following criteria are met:
>
> • The member's participating physician or licensed health care practitioner has determined that the member's condition can improve significantly based on physical measures (e.g., active range of motion (AROM), strength, function or subjective report of pain level) within one month of the date that therapy begins or the therapy services proposed must be necessary for the establishment of a safe and effective maintenance program that will be performed by the member without ongoing skilled therapy services. These services must be proposed for the treatment of a specific illness or injury; and
>
> • The PT services provided are intended to cover only episodes of therapy for situations where there must be a reasonable expectation that a member's condition will improve significantly in a reasonable and generally predictable period of time; and
>
> . . .
>
> Physical therapy in asymptomatic persons or in persons without an identifiable clinical condition is considered not medically necessary.
>
> Physical therapy in persons whose condition is neither regressing nor improving is considered not medically necessary.
>
> Once therapeutic benefit has been achieved, or a home exercise program could be used for further gains, continuing supervised physical therapy is not considered medically necessary.

ECF No. 28 ¶ 21.

As relevant to the putative class and subclass, Aetna's CPB # 243 (originally prepared May 21, 1998 and last reaffirmed May 7, 2019) similarly imposes a requirement that speech therapy will not only maintain or prevent the deterioration of speech, but will "improve significantly" and is expected to do so within a "predictable period of time." *Id*. CPB #243 further provides that "maintenance programs . . . that preserve the member's present level of function and prevent regression of that function" are not medically necessary. *Id*. Aetna's CPB #0032 (originally prepared July 21, 1998 and reaffirmed May 22, 2019) severely limits coverage for pulmonary rehabilitation therapy by providing that rehabilitation therapy is not medically necessary to maintain pulmonary function or prevent pulmonary deterioration, and precludes coverage where "there is a plateau in patient's progress toward goals, such that there is minimal or no potential for further substantial progress;" or "when there is no overall improvement". CPB #0032 further provides that pulmonary rehabilitation therapy is medically necessary only if the Plan member has no recent history of smoking (or has not quit smoking for at least 3 months) or when the Plan member is "motivated" to participate in the program. *Id*. Aetna's CPB # 0214 (originally prepared March 17, 1998 and reaffirmed June 5, 2019) likewise limits medically necessary cognitive rehabilitation therapy to treatment "expected to produce significant cognitive improvement," and excludes therapy to maintain and preserve cognitive function or prevent cognitive deterioration. *Id*. Aetna CPB #0250 (prepared May 26, 1998; reaffirmed June 11, 2019) provides that occupational therapy is only medically necessary where it is expected that the member's condition will "improve significantly" and "measurably" and is not medically necessary to maintain condition or absent "an identifiable clinical condition". *Id*. Lastly, Aetna CPB #0640 (prepared September 17, 2002; reaffirmed September 13, 2019) provides that voice

therapy is only medically necessary to improve condition and is not medically necessary to maintain voice function.  *Id.*

\* \* \*

For each of the foregoing CPBs, Curtis alleges that "[i]t is [his] belief that Aetna uniformly has denied payment to Plans' members for [each] therapy based on [the CPB's] non-plan limitations on when [each] therapy will be deemed medically necessary and will continue to do so on an ongoing basis unless remedied by this action."  *Id.*  As a result, Curtis seeks the entry of various equitable orders and injunctive relief, including reprocessing claims to benefits for therapy services allegedly improperly denied, for himself and other class members to redress Aetna's failure to adhere to the plain language of the plans in determining whether medical services are medically necessary.  *Id.* ¶ 6; *id.*, Prayer for Relief ¶ 7.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Standard

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).  As noted, *see* note 1, *supra*, the court may consider any

documents attached to, incorporated in by reference, or otherwise heavily relied upon in the complaint when deciding the motion.  Further, "[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, N.A. v. DB Structured Products, Inc.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014); *see also Feick v. Fleener*, 653 F.2d 69, 75 (2d Cir. 1981) (holding that dismissal under Rule 12(b)(6) is proper where "the documents upon which [plaintiffs] based their claim show on their face [the] absence of any grounds for relief.").

## B.    ERISA Standard of Review

When an ERISA plan participant challenges a denial of benefits, the proper standard of review is *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), in which case "a deferential standard of review is appropriate[,]" *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008). Here, Curtis asserts—and Aetna does not contest—that the Yale Plan contains no provision conferring discretion on Aetna to construe the terms of the Yale Plan. *See* ECF No. 38 at 18. Thus, because the parties have not identified—and I am not aware of—any provision in the Yale Plan granting Aetna such discretionary authority, I find that the proper standard of review of Curtis's denial of benefits claim under ERISA is *de novo*.[5]

---

[5] The terms of the Yale Plan make clear that its drafters knew how to assign such discretionary authority. Under the section of the Yale Plan titled "SUBROGRATION AND RIGHT OF RECOVERY", a paragraph labeled "Interpretation" provides as follows: "In the event that any claim is made that any part of this subrogation and right of recovery provision is ambiguous or questions arise concerning the meaning or intent of any of its terms, the Claims Administrator for the plan shall have the sole authority and discretion to resolve all disputes regarding the interpretation of this provision." ECF No. 33-1 at 86. The use of such language unambiguously assigning discretionary authority to construe terms under the subrogation and right of recovery section to Aetna—language

When applying the *de novo* standard of review, courts in the Second Circuit review "all issues arising when an ERISA claim denial is challenged under section 1132(a)(1)(B), including fact issues [and 'plan interpretation'] . . .", *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249-51 (2d Cir. 1999), and "must apply traditional principles of contract interpretation", *Sharkey v. Ultramar Energy Ltd., Lasmo plc, Lasmo (AUL Ltd.)*, 70 F.3d 226, 230 (2d Cir. 1995) (citing *Bruch*, 489 U.S. at 112-13).  As a result, the reviewing court "gives no deference to the administrative interpretation of the plan documents or its conclusion regarding the merits of the claim, but rather 'reaches its own conclusion about whether the plaintiff has shown, by a preponderance of the evidence, . . . entitle[ment] to benefits under the plan.'" *Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608, 632 (N.D.N.Y. 2016) (brackets in original) (quoting *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 8140 RPP, 2013 WL 3975941, at *12 (S.D.N.Y. Aug. 5, 2013) (collecting cases reaching the same conclusion and noting that "the Court stands in the shoes of the original decisionmaker" (internal quotation marks omitted))).

## III.   DISCUSSION

Aetna seeks to dismiss Curtis's complaint in its entirety because: (1) his "core theory of liability – that Aetna's medical guideline adds a condition, allegedly not present in his benefits plan, that PT services must be expected to improve function – fails as a matter of law because the benefits plan also requires that PT services be expected to improve function", ECF No. 33 at 1; (2) he "has failed to plausibly allege that Aetna's PT medical guideline [referring to CPB #325] imposes a test for PT coverage that violates the 'generally accepted medical standard'

---

that appears nowhere else in the Yale Plan—reinforces the conclusion that the *de novo* standard of review applies to Curtis's denial-of-benefits claim.

component of his benefit plan's medical necessity requirement" and "has failed to allege any facts to support a claim for relief that Aetna abused its discretion in considering a PT medical guideline as part of the administration of his claim", *id.* at 2; (3) he "has failed to allege injury in fact necessary for standing to pursue alleged ERISA violations stemming from Aetna's purportedly improper use of medical guidelines unrelated [to] his PT benefits claim", *id.*; and (4) he "has no equitable remedy of disgorgement against Aetna for funds not belonging to or possessed by Aetna", *id.*, because Aetna was merely the administrator of the Yale Plan, which is self-funded, and thus did not itself receive a financial benefit from denying benefits to Curtis. ECF No. 34 at 35. In response, Curtis argues that: (1) Aetna's motion to dismiss improperly ignores his allegations—including that his PT services constituted eligible health services and his benefits claims were denied because Aetna found they were not medically necessary—and seeks to have the court decide disputed factual issues; (2) CPB #325 imposes additional restrictions not contemplated by the Yale Plan; (3) he is not required to plead specific medical standards to support his denial of benefits claim; (4) he has standing to assert claims on behalf of the class and subclass; and (5) the remedy of disgorgement is not subject to dismissal. ECF No. 38 at 2.

I agree with Aetna's first argument – that Curtis's claim fails as a matter of law because, even accepting his factual allegations as true and drawing all reasonable inference in his favor, he seeks a benefit not covered by the Yale Plan. I thus grant Aetna's motion to dismiss and do not consider the parties' remaining arguments.

### A.   The Yale Plan Controls Which Benefits are Covered.

"ERISA's principal function [is] to protect contractually defined benefits." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (internal quotation marks omitted). The written document that defines those benefits is "[t]he plan, [which] . . . is at the center of ERISA." *Id.* at

101; *see also id.* at 100-01 ("The statutory scheme . . . is built around reliance on the face of written plan documents." (internal quotation marks omitted)).  "[N]othing in ERISA requires employers to establish employee benefits plans.  Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) (internal quotation marks omitted).  "Rather, employers have large leeway to design disability and other welfare plans as they see fit. . . .  [Thus, t]he validity of a claim to benefits under an ERISA plan . . . is likely to turn, in large part, on the interpretation of terms in the plan at issue." *Id.* (internal quotation marks and citation omitted).

The ERISA provisions that Curtis invokes make clear that his rights are limited to those benefits due to him under the terms of the Yale Plan.  Specifically, section 1132(a)(1)(B) provides as follows: "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him *under the terms of his plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to future benefits *under the terms of the plan*[.]" 29 U.S.C. § 1132(a)(1)(B) (emphasis added).  The Supreme Court has emphasized that this "statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them. . . .  [W]e have found nothing suggesting that the provision authorizes a court to alter those terms . . . ." *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011) (emphasis in original) (internal quotation marks and citations omitted); *see also Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) ("The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan. . . .  This focus on the written terms of the plan is the linchpin of a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." (internal quotation marks omitted)).  Likewise, section 1132(a)(3) "does not . . . authorize 'appropriate

16

equitable relief' *at large*; rather, it countenances only such relief as will enforce '*the terms of the plan*' or the statute." *McCutchen*, 569 U.S. at 100 (emphasis in original) (internal quotation marks and citation omitted).[6]

As relevant here, and as described in detail above, the Yale Plan does not contain—and neither party suggests that it contains—any ambiguity as to those benefits it does and does not cover.  Further, because interpreting the terms of a contract (like the Yale Plan) is a matter of law that is within the court's authority at the motion to dismiss stage in an ERISA denial-of-benefits case on *de novo* review (as is the case here), I need not give any deference to Aetna's alleged reasons for denying Curtis's claim and may, instead, reach my own conclusion as to whether Curtis's operative complaint states a claim for a benefit that is covered under the terms of the Yale Plan.  *See Firestone Tire and Rubber Co.*, 489 U.S. at 112-13 (citing pre-ERISA *de novo* standard, under which "the court reviewed the employee's claim as it would have any other contract claim – by looking to the terms of the plan and other manifestations of the parties' intent" – in reaching conclusion that same *de novo* standard applied under ERISA); *McDonnell*, 2013 WL 3975941, at *12 ("[T]he Court stands in the shoes of the original decisionmaker"); *see also Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 175 (D.C. Cir. 2006) (affirming dismissal of ERISA claim because the "[plaintiff] cannot escape the plain language in the Plan Document and Group Contract that shows that he has not stated a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) . . .").[7]

---

[6] Section 1132(a)(3) reads as follows: "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or *the terms of the plan*, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or *the terms of the plan*[.]" 29 U.S.C. § 1132(a)(3) (emphasis added).

[7] Even when the standard of review is deferential due to provisions of the plan conferring discretion on the administrator, and even when plaintiffs have alleged they are entitled to benefits under the plan, courts have dismissed claims when the plan language showed such plaintiffs were not entitled to benefits.  *See, e.g., Hogan v. Metromail*, 107 F. Supp. 2d 459, 474-76 (S.D.N.Y. 2000) (applying "abuse of discretion" standard of review and

**B.      The Physical Therapy Curtis Seeks is Not a Covered Benefit Under the Yale Plan.**

To state a claim for relief under section 1132(a)(1)(B), "a plaintiff must show that '(1) the plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied [benefits] owed under the plan.'" *Walker v. Prudential Ins. Co. of Am.*, No. 19 CIV. 7286 (AKH), 2020 WL 978515, at *2 (S.D.N.Y. Feb. 28, 2020) (quoting *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009)).  In addition, "[a] plaintiff who brings a claim for benefits under ERISA must identify a specific plan term that confers the benefit in question." *Stewart v. Nat'l Educ. Ass'n*, 404 F. Supp. 2d 122, 130 (D.D.C. 2005), *aff'd*, 471 F.3d 169 (D.C. Cir. 2006) (citing *Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999) (holding that "only benefits specified in the plan can be recovered in a suit under section 502(a)(1)(B)", and that plaintiffs' claim for unspecified interest on late benefit payments "is inconsistent with the principle that benefits payable under an ERISA plan are limited to the benefits specified in the plan." (citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144-47 (1985)) (citations omitted))).  The court "may therefore dismiss an action if the plaintiff is not entitled to a benefit [he] seek[s] under the ERISA-regulated plan." *Stewart*, 404 F. Supp. 2d at 130.

Here, both parties agree that the Yale Plan is covered by ERISA and that Curtis is a participant or beneficiary of that plan.  The issue, then, is whether the benefit Curtis seeks is one afforded by the Plan.  I conclude that the factual allegations of the operative complaint, even when all reasonable inferences are drawn in favor of Curtis, show that he is seeking rehabilitative maintenance physical therapy, and that this is not a benefit the Yale Plan covers.

---

granting defendant's motion to dismiss plaintiffs' ERISA claim for denial of severance pay benefits because, although plaintiffs, who were still employed when they submitted their claim, alleged that they were entitled to severance payments, they failed to allege facts "satisfying the requirement of the Plan that severance pay is awarded when 'employment is terminated.'").

1.      *Curtis seeks rehabilitative maintenance physical therapy as a covered benefit.*

In his response to Aetna's motion to dismiss, Curtis argues that "the gravamen of plaintiff's claim poses the same issue as to all of the putative class members: is Aetna's contention that *rehabilitative* therapy services are not medically necessary unless they will significantly improve a patient's condition -- and, in particular, are not medically necessary when the services will maintain and prevent deterioration of a patient's condition -- valid?" ECF No. 38 at 25 (emphasis added). That formulation accurately summarizes Curtis's amended complaint, which repeatedly makes allegations as to him and the putative class and subclass regarding "physical therapy and other forms of *rehabilitative* therapy". *See* ECF No. 28 ¶¶ 3, 14, 38, 39 (emphasis added).

The complaint also makes clear that he alleges that he is owed, as a covered benefit, rehabilitative physical therapy treatment regardless of whether, or when, such treatment is expected to lead to any improvement in his condition. Curtis alleges that Aetna has denied him coverage for physical therapy based on restrictions in CPB #325 that limit physical therapy to "circumstances in which such services will 'improve significantly' the patient's condition" and that "exclude[] physical therapy services necessary to preserve or prevent deterioration of physical function or as to which the time for expected improvement cannot be predicted." *Id.* ¶ 4. In discussing medical necessity, Curtis emphasizes that "[g]enerally accepted standards of medical practice overwhelmingly establish that therapy services to maintain and prevent the deterioration of a patient's condition are medically necessary even if such condition may not be expected to improve." *Id.* ¶ 24; *see also id.* ¶17 ("The ERISA-governed Plans for which Aetna performs claims administration services (including the Yale Plan) do not limit 'medically necessary' services to medical care that 'significantly improves' a plan member's condition or to

19

care based upon improvement within a specified time period; and proper (medically necessary) treatment of a patient can often involve medical services that act only to preserve a patient's condition from deterioration caused by an underlying illness, injury, disease or its symptoms; moreover, to the extent a goal of a particular therapy is improvement of a patient's condition, medically necessary treatment of uncertain duration may reasonably be required before improvement occurs.").  As to his own claims, Curtis alleges that he has required "physical therapy treatment, pursuant to his treating physicians' orders and prescriptions," "to treat [his ongoing] balance, strength and mobility issues" caused by neurological and other conditions and surgical procedures starting in July 2016 through the filing of this federal action and beyond, and that the "medical necessity, purpose and likely effect of the physical therapy . . . has not abated or changed" and has remained "identical" throughout this time period.  *Id.* ¶¶ 28-34.  Curtis alleges that he "has an ongoing need for physical therapy services," *id.* ¶ 36, but he does not allege that these treatments have led to any improvement in his condition since July 2016 or that any future treatments are expected to lead to any improvement in his condition.

Under the Yale Plan, short-term rehabilitation services "help you restore or develop skills and functioning for daily living. . . . [and] have to follow a specific treatment plan."  ECF No. 33-1 at 35.  Eligible health services "include short-term rehabilitation services your physician prescribes."  *Id.* at 35.  Outpatient[8] physical therapy is an eligible health service under short-term rehabilitation services, "but *only if it is expected to significantly improve or restore* physical functions lost as a result of an acute illness, injury or surgical procedure."  *Id.* at 36 (emphasis added).  The Yale Plan also sets forth a general exclusion for "Maintenance care," which is

---

[8] Curtis nowhere alleges that he has required, or is seeking, multi-year *inpatient* physical therapy as a covered benefit under the Yale Plan.

defined as "[c]are made up of services and supplies that maintain, rather than improve, a level of physical or mental function, except for habilitation therapy services." *Id.* at 49.

Curtis alleges that he seeks, as a covered benefit, rehabilitative physical therapy treatments for which the "medical necessity, purpose and likely effect" has been "identical" for at least three and a half years prior to filing this case and that he has an "ongoing need" for these physical therapy treatments regardless of whether those treatments lead to any improvement over time. Further, Curtis makes no allegation that he seeks physical therapy treatment that is expected to improve his condition, within either one month or some longer period. Rather, even drawing all reasonable inferences in his favor, I find that Curtis seeks, as a covered benefit, rehabilitative physical therapy treatment that is expected to maintain or slow the deterioration of his current condition, or "as to which the time for expected improvement cannot be predicted." ECF No. 28 ¶ 4. He thus seeks rehabilitative physical therapy that is *not* "expected to significantly improve or restore [(either within any specified period of time or at all)] physical functions lost as a result of an acute illness, injury or surgical procedure," ECF No. 33-1 at 36, and can accurately be described, in terms of the Yale Plan, as rehabilitative maintenance physical therapy.[9]

Before discussing whether such a benefit is covered under the Yale Plan, I note that Curtis does not make any allegation that could be construed as seeking *habilitation*—as opposed to *re*habilitation—physical therapy. Indeed, while his amended complaint is peppered with references to "rehabilitation" and "rehabilitative," the words "habilitation" and "habilitative"

---

[9] Even if Curtis's complaint seeks a covered benefit that falls outside the definition of "Maintenance care", he does not identify any provision of the Yale Plan setting forth, as a covered benefit, the kind of long-term rehabilitative physical therapy he alleges that his doctors have prescribed to treat his ongoing strength, balance, and mobility issues stretching over more than three years.

appear nowhere in that pleading.  That is important because the Yale Plan *does* authorize maintenance-type care for *habilitation* physical therapy.  Nonetheless, Curtis appears to raise in his brief the Yale Plan's apparent coverage of maintenance-type habilitative physical therapy in support of his claim for what amounts to maintenance *re*habilitative physical therapy.  *See* ECF No. 38 at 8-9.  As noted above, the Yale Plan defines short-term rehabilitation services as those that "help you restore or develop skills and functioning for daily living" and states that one such service, outpatient rehabilitative physical therapy, qualifies as an "eligible health service[]" "only if it is expected to significantly improve or restore physical functions lost as a result of an acute illness, injury or surgical procedure."  ECF No. 33-1 at 35-36.  By contrast, "[h]abilitation therapy services are services that help you keep, learn, or improve skills and functioning for daily living (e.g. therapy for a child who isn't walking or talking at the expected age)."  *Id.* at 36.[10]  Among other criteria, outpatient habilitative physical therapy is an eligible health service "if it is expected to develop any impaired function."  *Id.*[11]  As Aetna points out, *see* ECF No. 41 at 13, Curtis makes no mention of "habilitative services" in his complaint and makes no allegation that he needs physical therapy to develop skills that he never learned or had.  ECF No. 33-1 at 35.  Rather, Curtis alleges that he needs physical therapy, which he describes as "rehabilitative," "to treat ongoing balance, strength and mobility issues" caused by neurological and other conditions and surgical procedures, ECF No. 28 ¶¶ 3, 28-29, and that the "medical

---

[10] The example of a "child who isn't walking or talking at the expected age" suggests that the focus of "habilitation therapy" is teaching skills not yet learned.

[11] The Yale Plan's definitions of rehabilitation and habilitation therapy services are consistent with dictionary definitions of these terms, *see Rehabilitate*, Merriam-Webster Online Dictionary (defining "rehabilitate" to mean "to restore to a former capacity"), https://www.merriam-webster.com/dictionary/rehabilitate (last accessed March 12, 2021); *Habilitate*, Merriam-Webster Online Dictionary (defining "habilitate" to mean "to make fit or capable (as for functioning in society)"), https://www.merriam-webster.com/dictionary/habilitate (last accessed March 12, 2021).

necessity, purpose and likely effect" of the physical therapy his physicians have ordered for him

has remained "identical" since July 2016, *id.* ¶ 34.

> 2. *Rehabilitative maintenance physical therapy is not a covered benefit under the Yale Plan.*

Curtis does not identify a specific plan provision that confers the benefit he seeks.

Rather, Curtis rests his claim that he seeks an eligible health service on his conclusory allegation

that the physical therapy he seeks constitutes such a service and on *Aetna's* approval for

coverage from July 2016 to September 2017, September 2017 to April 2018 (after initially

denying coverage and then approving it on appeal), and November 2019 to January 2020. *Id.* ¶¶

28-29, 32. Aetna denied coverage for Curtis's physical therapy treatment from April 2018 to

November 2019. *Id.* ¶ 30. In particular, Curtis argues that he has sufficiently alleged a claim for

denial of benefits under ERISA because (1) Aetna must have determined that the physical

therapy treatment it approved for Curtis was both an eligible health service and medically

necessary because it approved the treatment for at least part of the relevant period, and (2) the

"medical necessity, purpose and likely effect" of his physical therapy treatments have not

changed since July 2016 and he has an "ongoing need for physical therapy services." *Id.* ¶ 34,

36. Curtis concludes that he "has been wrongly denied covered benefits under the Yale Plan for

physical therapy services from April 2018 through November 2019 constituting eligible health

services pursuant to the Plan as to which he is entitled to Plan benefits." *Id.* ¶ 35. I disagree.

Curtis's allegations are insufficient to state a claim under ERISA when read against the

plain terms of the Yale Plan. That is so because, as described in detail above, rehabilitative

physical therapy is an eligible health service "*only if* it is expected to significantly improve or

restore physical functions lost as a result of an acute illness, injury or surgical procedure." ECF

No. 33-1 at 36 (emphasis added). But Curtis does not allege that the rehabilitative physical

therapy his physicians prescribed for him "is ([or was]) expected to significantly improve or restore physical functions lost . . . ."  *Id.*  Rather, for the reasons discussed above, Curtis's allegations amount to seeking as a covered benefit what the Yale Plan defines, and expressly excludes coverage for, as "[m]aintenance care."  *See id.* at 49 (Yale Plan's general exclusion of "[m]aintenance care"—defined as "[c]are made up of services and supplies that maintain, rather than improve, a level of physical or mental function, except for habilitation therapy services"). In addition, to the extent Curtis's complaint could be construed as seeking general strength and performance training or rehabilitative physical therapy to treat a chronic condition, those benefits are also excluded under the Yale Plan.  *See id.* at 51 (Yale Plan's general exclusion of "[s]trength and performance"—defined as "[s]ervices, devices and supplies such as drugs or preparations designed primarily for enhancing your: Strength[,] Physical condition[,] Endurance[, and] Physical performance"); *id.* at 55 (Yale Plan's specific exclusion from short-term rehabilitation services (with exceptions to the exclusion not applicable here) of "therapies to treat delays in development and/or chronic conditions.").[12]  As a result, because Curtis has not identified any provision of the Yale Plan—and I am aware of none—that provides the rehabilitative physical therapy treatments he seeks as a covered benefit, I find that he seeks a benefit that is beyond the scope of the Yale Plan and I therefore must grant Aetna's motion to dismiss.

---

[12] The Yale Plan does not provide a definition of "chronic" (it does provide three specific examples of "developmental and/or chronic" conditions that are excluded from coverage under short-term rehabilitation services: autism spectrum disorder, down syndrome, and cerebral palsy.  *See* ECF No. 33-1 at 55.).  The Centers for Disease Control and Prevention defines "chronic diseases" "broadly as conditions that last 1 year or more and require ongoing medical attention or limit activities of daily living or both."  *See About Chronic Diseases*, Centers for Disease Control and Prevention, (last accessed March 15, 2021), available at https://www.cdc.gov/chronicdisease/about/index.htm.  Curtis's alleged neurological and other conditions and surgical procedures—causing balance, strength and mobility issues—for which he alleges he has had a need for physical therapy treatments with identical medical necessity, purpose and likely effect for more than three years, easily meet the CDC's definition of "chronic".

Curtis's reliance on his own conclusory allegation and Aetna's alleged determination to the contrary (except for April 2018 to November 2019) is misplaced. *See* ECF No. 38 at 16. Curtis's bare allegation that the benefit he seeks is an eligible health service cannot survive Aetna's motion to dismiss for the simple reason that such an allegation is not a *factual* allegation. Rather, it is a legal conclusion couched as a factual allegation. *See Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citations omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")); *see also Iqbal*, 556 U.S. at 678 ("a complaint [will not] suffice if it tenders naked assertion[s] devoid of further factual enhancement."); *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020) (affirming district court's dismissal of plaintiffs' ERISA denial of benefits claim because they "failed to identify a specific term in their health care plan that conferred the benefits they claim they were denied"; rather, plaintiffs alleged broadly that they were entitled to particular benefits under the terms of their plans). Further, Curtis's bare assertion that the physical therapy he alleges he needs "constitute[s] covered benefits for eligible health services pursuant to the Yale Plan," ECF No. 28 ¶ 32; *see also id.* ¶ 35, is, as shown above, contradicted by the terms of the Yale Plan, which make clear that long-term, maintenance-type rehabilitative physical therapy is not covered. *See DB Structured Products, Inc.*, 5 F. Supp. 3d at 551 (S.D.N.Y. 2014) ("[i]f a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control,

and the court need not accept the allegations in the complaint as true.") (citing cases that rely on *Feick v. Fleener*, 653 F.2d 69, 75 (2d Cir. 1981)).

With regard to Aetna's determination that Curtis's physical therapy services were, for certain periods, covered as eligible health services under the Yale Plan, I owe no deference to that determination, as discussed above.  In any event, Aetna cannot waive a coverage limitation by erroneously approving benefits that the Yale Plan does not cover, *see Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 288 (2d Cir. 2000) (in ERISA denial-of-benefits case, "where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable"); moreover, the Yale Plan contains a provision preserving the plan's right to recover benefit overpayments, *see* ECF No. 33-1 at 84 ("Recovery of overpayments[.]  If a benefit payment is made by the [Yale] Plan, to or on your behalf, which exceeds the benefit amount that you are entitled to receive, the Plan has the right to require the return of the overpayment. . . .").

Lastly, even if Curtis is correct that CPB #325 restricts the definition of "medically necessary" beyond what the Yale Plan allows, I must still dismiss his claim.  Curtis alleges that Aetna's denial of benefits was wrongful because it relied on CPB #325 in determining that the benefits were not "medically necessary" and the definition of "medically necessary" in that bulletin is narrower than that set forth in the Yale Plan.  But, as discussed above, the specific benefit Curtis seeks is not a covered benefit under the terms of the Yale Plan, and the ERISA provisions he invokes provide rights to Curtis only to the extent he seeks a benefit owed to him under that plan.  *See supra* Part III.A.  To be sure, Curtis does identify specific terms in CPB #325 that are, at a minimum, more specific than those provided in the Yale Plan.  For example, CPB #325's requirement that, for rehabilitative physical therapy to be medically necessary, the

"member's . . . physician . . . [must] ha[ve] determined that the member's condition can improve significantly based on physical measures . . . within one month of the date that therapy begins . . .", ECF No. 33-2 at 2, is more specific than any relevant provision of the Yale Plan.[13]  But even if that provision or others in CPB #325 are, in fact, narrower than the Yale Plan's definition of "medically necessary", Curtis has not alleged that he requested, and that Aetna denied, any benefit that (1) is a covered benefit under the Yale Plan and (2) is excluded under CPB #325. And as discussed above, I need not follow Aetna's alleged approach to denying Curtis's claim; rather, I review the terms of the Plan *de novo* to determine whether the facts alleged by Curtis describe a denial of a benefit to which he was entitled under the Plan.  *See, e.g.*, *Juliano*, 221 F.3d at 287-88 (rejecting argument that district court could not affirm plan administrator's decision on ground not asserted by administrator in its decision denying benefits and noting that "[i]f plan administrators lost the ability to assert in court reasons for declining coverage that were not asserted at the time reimbursement was declined, the notices would threaten to become meaningless catalogs of every conceivable reason that the cost in question might not be reimbursable, instead of candid statements as to why the administrator framing the notice thinks reimbursement is unwarranted.").  In short, it makes no difference that Aetna might have erroneously relied on CPB #325 to deny Curtis's claim if, under the terms of the Plan, it was correct to deny the claim.  For these reasons, Curtis's allegations are distinguishable from the facts in *Meidl* and *S.B.*, on which Curtis relies, because those cases involved improper reliance

---

[13] The Yale Plan describes the eligible rehabilitative physical therapy services as *short-term* and requires, for medical necessity in general, eligible health services to be "[c]linically appropriate, in terms of type, frequency, extent, site and *duration* . . . ."  ECF. 33-1 at 92 (emphasis added).  Thus, I note—without deciding—that CPB #325's definition of "medically necessary" is not necessarily narrower than that found in the Yale Plan.  Because Curtis has not alleged facts demonstrating that he seeks a benefit that it otherwise covered by the Yale Plan, I need not decide whether his allegation regarding the comparative scope of the Yale Plan's and CPB #325's definition of "medically necessary" is correct.

on non-plan documents to deny coverage for benefits otherwise covered under the relevant plan. *See S.B. v. Oxford Health Insurance, Inc.*, 419 F. Supp. 3d 344 (D. Conn. 2019); *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223 (D. Conn. 2018).  Though Curtis may have identified an inconsistency between CPB #325 and the Yale Plan—a question I do not decide here—he has failed to allege facts showing that he was denied a covered benefit under the plain and unambiguous terms of the Yale Plan.  Thus, Aetna's motion to dismiss must be granted.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF No. 33, is hereby GRANTED.

IT IS SO ORDERED.

_____
/s/
Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
             March 18, 2021