# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DENNIS E. CURTIS, on his own behalf and on
behalf of all others similarly situated,

  *Plaintiffs*,

  v.

AETNA LIFE INSURANCE COMPANY,

  *Defendant*.

No. 3:19-cv-01579-MPS

## RULING ON MOTION TO DISMISS

Plaintiff Dennis E. Curtis ("Curtis"), on his own behalf and on behalf of all others similarly situated, brings this action against Aetna Life Insurance Company ("Aetna") alleging that Aetna has violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by failing to administer Curtis's and the proposed class members' claims for benefits under their ERISA group medical benefits plans in accordance with the plans' provisions. Specifically, Curtis alleges that Aetna has violated ERISA by denying benefits to plan members based upon definitions of "medically necessary" contained in a series of internal Aetna Clinical Policy Bulletins ("CPBs") that are not a part of, or incorporated in, any of the ERISA plans, in violation of Aetna's duty to administer each plan in accordance with its terms. Second Amended Complaint, ECF No. 54 ¶¶ 16-21. Curtis claims that these CPBs modify and limit, to plan members' detriment, the plans' definition of "medically necessary." *Id.* ¶ 19. Aetna filed a motion to dismiss only the class claims related to CPBs governing "forms of rehabilitation therapy for which [Curtis] never submitted claims for coverage" because it claims that Curtis lacks "class standing" to bring these claims. ECF No. 64 at 1. For the reasons set forth below, I grant Aetna's motion to dismiss the class claims related to CPBs governing all forms of rehabilitation therapy for which Curtis never submitted a claim for coverage, leaving only his

claims on behalf of a class related to CPB 325, which governs the physical therapy benefits for which he sought coverage.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from Curtis's second amended complaint and are accepted as true for the purpose of this motion.[1]

Curtis is a beneficiary of a group medical benefits plan established by Yale University ("Yale") for its employees and their beneficiaries. ECF No. 54 ¶ 1. The plan (the "Yale Plan") is an employee benefit plan subject to ERISA. *Id.* Claims administration for the Yale Plan is provided by Aetna, a Connecticut corporation that performs claims administration services for ERISA plans funded by employers such as Yale, as well as for ERISA plans that Aetna or its affiliated companies directly insure. *Id.* ¶¶ 1, 13.[2]

Like all ERISA group medical benefits plans administered by Aetna, the Yale Plan limits coverage to "medically necessary" health care expenses. *Id.* ¶ 2. The Yale Plan contains a standard definition of "medically necessary" that is substantially identical to the definition of "medically necessary" in the other ERISA plans administered by Aetna. *Id.* ¶¶ 2, 16. The Yale Plan defines "medically necessary/medical necessity" as follows:

> Health care services that a provider exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
>
> •     In accordance with generally accepted standards of medical practice[;]
>
> •     Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease[;]

---

[1] I recounted many of the allegations and facts in this section in my ruling on Aetna's previous motion to dismiss. *See* ECF No. 46. I have reproduced here text from that ruling where appropriate, supplementing with additional allegations relevant to Curtis's class claims that were not discussed in my previous ruling.

[2] For ease of reference in this ruling, I use the term "Plans" to refer collectively to the Yale Plan and the other ERISA group medical benefits plans for which Aetna provides claim administration services and about which Curtis makes allegations in this case.

- Not primarily for the convenience of the patient, physician, or other health care provider[; and]

- Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

Generally accepted standards of medical practice means:

- Standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community.

- Consistent with the standards set forth in policy issues involving clinical judgment.

*Id.* ¶ 15.

Aetna maintains a series of internal Aetna Clinical Policy Bulletins that are not a part of, or incorporated in, any of the Plans and that modify and limit the Plans' definition of "medically necessary." *Id.* ¶ 3. The CPBs purport to set forth Aetna's view of when medical services for physical therapy and other forms of rehabilitative therapy should be deemed medically necessary. *Id.* Aetna denies benefits for such therapy services based upon the definitions of medically necessary in the CPBs, even though the services qualify as medically necessary under the definition of that term set forth in the Plans. *Id.* For example, Aetna has denied coverage for physical therapy services prescribed by Curtis's and other covered members' physicians based on Aetna's CPB 325. *Id.* ¶ 4. CPB 325 contains limitations that are not contained in the Plans' definition of medically necessary and that are contrary to accepted medical standards for when physical therapy is medically warranted. *Id.* Aetna has similarly denied benefits to covered plan members other than Curtis for occupational, speech, cognitive rehabilitation, and other forms of therapy, as not medically necessary based upon provisions of other CPBs that likewise either add

requirements to or are not consistent with the plain words of the Plans' definition of "medically necessary." *Id.*

### A.   Dennis E. Curtis

In July 2016, Curtis began receiving physical therapy treatment, under his treating physicians' orders and prescriptions, to treat balance, strength, and mobility issues caused by neurological and other conditions and surgical procedures. *Id.* ¶ 28. Aetna initially approved coverage and benefits for Curtis's physical therapy, but in September 2017, Aetna began denying coverage on the ground that under CPB 325 physical therapy was no longer "medically necessary." *Id.* In response to Curtis's appeals, Aetna ultimately reversed its denials and approved payment of benefits for Curtis's physical therapy through April 2018. *Id.* From April 2018 to the filing of the operative complaint, Curtis's treating physicians have continued to prescribe physical therapy as medically necessary to treat his ongoing balance, strength, and mobility issues. *Id.* ¶ 29.

Aetna denied coverage for Curtis's physical therapy from April 2018 through November 17, 2019 as not medically necessary, notwithstanding his submission of documentation from his treating physicians. *Id.* ¶ 30. This documentation attested to the medical need and appropriateness of such therapy for Curtis, in full satisfaction of the requirements set forth in the Yale Plan for establishing that the physical therapy is medically necessary. *Id.* Curtis appealed Aetna's denial of post-April 2018 coverage for his physical therapy to Aetna and to a third-party reviewing entity (as provided by the Yale Plan), but his appeals were denied on the ground that the physical therapy did not meet the requirements necessary to establish that the treatment was medically necessary as set forth in Aetna's internal policy, CPB 325. *Id.* ¶ 31. The medical necessity, purpose, and likely effect of the physical therapy ordered for Curtis by his treating

physicians has not abated or changed since April 2018. *Id.* ¶ 32. On January 14, 2020, Aetna advised Curtis that it had determined that the physical therapy services ordered by his physicians from November 18, 2019 through January 2, 2020 and ten additional sessions beginning on January 3, 2020 were eligible health services under the Yale Plan. *Id.* ¶ 33.

Aetna has denied Curtis coverage for physical therapy ordered by his treating physicians and certified by them as medically necessary on the ground that such therapy was not medically necessary under Aetna's CPB 325 because it would not "improve significantly" Curtis's physical condition within a specified duration, i.e., within one month of the start of service. *Id.* ¶¶ 25-26. Curtis asserts that the physical therapy ordered by his treating physicians is a covered benefit under the Yale Plan as both a "short-term rehabilitation service[]" and a "habilitation therapy service[]." *Id.* ¶ 38, 40.

Curtis thus alleges that he has been denied covered benefits under the Yale Plan for physical therapy services from April 2018 through November 2019 based on Aetna's "policy and practice of denying benefits for therapy services based on non-plan provisions in its CPBs." *Id.* ¶ 35. Curtis has an ongoing need for physical therapy services. *Id.* ¶ 36.

**B.      The Proposed Class**

Curtis brings this action under Fed. R. Civ. P. 23 on his own behalf and on behalf of the following Class and Sub-Class of persons similarly situated to him:

a.      Class 1 is defined to include:

> All participants or beneficiaries in the ERISA-governed group medical benefit Plans (both for self-funded employers or as a[n] insurer, directly or through its affiliates) as to which Aetna provides claims administration services.

b.      Sub-Class 1a is defined to include:

> All participants or beneficiaries in the ERISA-governed group medical benefit Plans (both for self-funded employers or as a[n] insurer, directly or through its

> affiliates) as to which Aetna provides claims administration services, who, during the relevant limitations period, have been denied benefits for therapy services covered by their Plans, as not medically necessary, based on requirements for establishing the therapy was medically necessary contained in Aetna's CPB #325, 243, 0032, 0214, 0250 and 0640 or other non-plan documents inconsistent with the Plans' definition of "medical necessary."

*Id.* ¶ 41.

The requirements for establishing that a medical service is "medically necessary" contained in the various Plans administered by Aetna are substantially identical. *Id.* ¶ 42a. Aetna follows a uniform and systematic policy and practice of relying on the requirements set forth in its CPBs for establishing that medical services for physical therapy and other forms of rehabilitative therapy are medically necessary in determining whether the services for which participants or beneficiaries under the Plans have submitted claims for benefits are medically necessary. *Id.* ¶ 42b. The CPBs uniformly contain requirements for establishing medical necessity that are not contained in the Plans, that impose additional restrictions not contained in the Plans, and that misapply the plain meaning of the definition of medically necessary in the Plans, to the detriment of the Plans' members. *Id.* ¶ 42c. Aetna has applied the CPB definitions of medical necessity to deny Curtis's and the other Plans' members' claims for benefits for "therapy services . . . they were entitled to receive pursuant to their Plans." *Id.* 42d-e.

In particular, Curtis challenges Aetna's use of six CPBs on behalf of the proposed class: 325 (physical therapy), 243 (speech therapy), 32 (pulmonary rehabilitation therapy), 214 (cognitive rehabilitation therapy), 250 (occupational therapy), and 640 (voice therapy). *Id.* ¶ 21. Each CPB contains language defining medical necessity in ways contrary to the definition of medical necessity in the Plans. *Id.* ¶ 42c. For example, CPB 325 states that "[p]hysical therapy in persons whose condition is neither regressing nor improving" is "not medically necessary." *Id.* ¶ 21a. It further states that the member's health care provider must have determined that the

member's condition can "improve significantly based on physical measures . . . within one month of the date that therapy begins or the therapy services proposed must be necessary for the establishment of a safe and effective maintenance program." *Id.* ¶ 21a. This contradicts "[g]enerally accepted standards of medical practice [that] overwhelmingly establish that therapy services to maintain and prevent the deterioration of a patient's condition are medically necessary even if such condition may not be expected to improve." *Id.* ¶ 24. CPB 243 "imposes a requirement that the therapy will not only maintain or prevent the deterioration of speech, but will 'improve [the speech] significantly' and is expected to do so within a 'predictable period of time,'" requirements that contradict the definition of medical necessity in the Plans. *Id.* ¶ 21b. And CPB 214 "limits medically necessary cognitive rehabilitation therapy to treatment 'expected to produce significant cognitive improvement,' again excluding therapy to maintain and preserve cognitive function or prevent cognitive deterioration, even though the Plans' definition of medically necessary authorizes no such limitations." *Id.* ¶ 21d. There is specific language in each CPB that limits the definition of medical necessity in ways contrary to the Plans' definition. *See id.* ¶ 21.

Curtis has not yet filed a motion to certify the proposed class.

## II. DISCUSSION

### A. Class Standing

As noted above, Aetna challenges Curtis's "class standing" to bring certain claims on behalf of the class of persons he proposes to represent. To illuminate the somewhat-novel doctrine of "class standing," it helps to begin with some basic principles and an understanding of what Aetna is *not* challenging. "To bring an ERISA suit, a plaintiff must demonstrate both constitutional standing and a cause of action under ERISA." *Dezelan v. Voya Ret. Ins. and*

*Annuity Co.*, 3:16-CV-1251, 2017 WL 2909714, at *5 (D. Conn. July 6, 2017) (citation omitted). Constitutional "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he 'irreducible constitutional minimum' of standing consists of three elements . . . [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560-61). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). Here, Aetna does not contest Curtis's standing to bring this action; in any event, Curtis's claims about CPB 325 plainly allege an injury in fact traceable to Aetna's conduct that I can redress. Nor does Aetna contest that Curtis has stated a cause of action under ERISA.

But because Curtis is suing on behalf of a proposed class, he must clear additional thresholds to proceed with his class claims, at least in the Second Circuit. The Circuit has articulated additional standing requirements in the class action context. It has, for example, held that "no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *see also TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021) (agreeing with this principle and stating that "[e]very class member must have Article III standing in order to recover individual damages"). Aetna does not challenge the standing of absent class members; and in any event, the facts alleged suggest that absent class members have suffered injuries from Aetna's use of CPBs, i.e., being denied benefits for reasons inconsistent with the Plans that fund their healthcare. *See* ECF No. 64 at 1.

8

Aetna's motion to dismiss involves a more recent standing requirement articulated by the Second Circuit: class standing. The Circuit has elaborated the class standing doctrine in two cases, *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Company*, 693 F.3d 145 (2d Cir. 2012), and *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014).

In *NECA*, the Second Circuit analyzed three Supreme Court decisions that considered whether the claims of a named plaintiff were so different from the claims of potential class members that the named plaintiff lacked Article III standing to litigate the class members' claims. *See NECA*, 693 F.3d at 160-62. In the most recent of these cases, *Bollinger*, the Supreme Court examined the use of race in undergraduate admissions by the University of Michigan. *Id*. at 161 (citing *Gratz v. Bollinger*, 539 U.S. 244 (2003)). The plaintiff in *Bollinger* was denied admission as a freshman, enrolled at another school, and demonstrated, first, that he had individual standing to challenge the university's use of race in admissions decisions because he was "able and ready" to apply as a transfer student should the university stop considering race in admissions decisions. *Bollinger*, 539 U.S. at 262. But the way the University considered race in transfer admissions differed from the way it did so in freshman admissions, so the plaintiff's injury differed from injuries to class members who were applying to be incoming freshmen. *Id*. at 266. The Supreme Court nonetheless held that the plaintiff could litigate the class claims despite the differences between his situation and those of class members who had yet to receive freshman admissions decisions because the class members' claims did "not implicate *a significantly different set of concerns*" than the plaintiff's claims. *Id*. at 265 (emphasis added).

As the *NECA* court noted, however, the Supreme Court has held in other cases that the individual and class claims were too dissimilar for the named plaintiff to litigate the class claims.

*See Lewis v. Casey*, 518 U.S. 343, 357 (1996) (in prison right-of-access-to courts case, overturning provisions in injunction aimed at remedying problems that had not injured named plaintiff because courts are limited to addressing "the inadequacy that produced the injury in fact that the plaintiff has established," and noting that plaintiff's demonstration of harm "from one particular inadequacy in government administration" does not authorize judicial relief against "*all* inadequacies in that administration"); *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (plaintiff nursing home residents who were Medicaid beneficiaries and were threatened with transfers to lower levels of care had standing to bring suit to challenge procedural inadequacies in the transfers but did not have standing to challenge such inadequacies in transfers to higher levels of care: "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject").

From these three cases, the Second Circuit in *NECA* determined that a named plaintiff cannot litigate class claims for which he cannot plausibly allege class standing and that class standing depends on the nature of the injury and the proof required to establish the claim. The court noted that even if the named plaintiff's injury "flow[s] from" the same source as the class members' injuries, that is not sufficient if the respective injuries have "the potential to be very different" and "could turn on very different proof." *NECA*, 693 F.3d at 163. The individual and class claims must be similar enough to "raise the same set of concerns." *Id.* A plaintiff thus has class standing if "he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the

putative class by the same defendants." *NECA*, 693 F.3d at 162 (internal quotation marks and citations omitted).

The Second Circuit then applied this test to the plaintiff in *NECA*. There, the defendant sold mortgage-backed securities under the same registration statement and base prospectus in seventeen separate offerings. *NECA*, 693 F.3d at 148-49. The plaintiff brought class claims on behalf of anyone who purchased a security in any of the seventeen offerings, though it had only purchased securities in two offerings. *Id.* at 149. The plaintiff claimed that the registration statement associated with all of the securities contained false and misleading statements about the underwriting practices of lenders whose loans backed the securities. *Id.* The *NECA* court held that the plaintiff had class standing to represent those who purchased securities backed by loans originated by the same originators that had originated the loans backing the two offerings in which the plaintiff had purchased securities. *Id.* at 164. This conclusion rested on the nature of the plaintiff's claim — that the defendant had falsely represented that particular originators had complied with their underwriting guidelines — and the fact that the proof of that claim would rely on the same evidence for all offerings of securities backed by loans from the same originators. *Id.* at 163 (proof of each claim "would center on whether the particular originators of the loans backing the particular [o]ffering from which [plaintiff] purchased a security had in fact abandoned [their] underwriting guidelines, rendering defendants' Offering Documents false or misleading"). Because the evidence the plaintiff had to develop to prove its individual claim was similar to the evidence that would be required of class members who purchased securities backed by loans from the same originators, plaintiff's individual "claims raise[d] a sufficiently similar set of concerns to permit it to purport to represent [c]ertificate-holders from those [o]fferings." *Id.* at 164; *see also Ret Bd.*, 775 F.3d at 161-62 (explaining that in *NECA*, "because the stated

underwriting guidelines for each originator were essentially the same across all of the offering documents, proving that these guidelines were materially misleading as to loans held by one trust would tend to prove that those same guidelines were similarly misleading as to loans held by other trusts"). The plaintiff did not have class standing, however, to represent those who purchased securities backed by loans from different lenders because it had no incentive to develop evidence about those lenders to advance its individual claim and those other claims "could turn on very different proof." *Id.* at 163.

The test for class standing was further refined in *Retirement Board. See Ret. Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 159-64 (2d Cir. 2014). There, the Second Circuit held that the "core question" for class standing "is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant." *Id.* at 163. A plaintiff has the requisite stake in proving other related claims when the absent class members' claims are "similar to those of the named plaintiff in all essential respects" such that "the proof contemplated for all of the claims," both individual and class, "would be sufficiently similar." *Id.* at 161. A plaintiff thus has standing to litigate class claims when the individual and class claims do not "generate[] significant differences in the proof that will be offered." *Id.* at 163. If the proof required for the plaintiff's individual claims does not "tend to prove" the class claims, however, then the plaintiff lacks standing to litigate the class claims. *See id.* at 162.

The Second Circuit then applied this refinement of the *NECA* test, holding that "the plaintiff[s] did not have class standing to bring breach of contract claims on behalf of investors in over five hundred trusts when the plaintiff[s] had invested in only twenty-six of the trusts

[themselves]." *Dezelan*, 2017 WL 2909714, at *8 (citing *Ret Bd.*, 775 F.3d at 162). The plaintiffs lacked class standing to represent investors in trusts in which they did not themselves invest because proving defendant's unlawful conduct required "examining [defendant's] conduct with respect to each trust" such that there was "no way in which answering . . . questions for the trusts in which Plaintiffs invested w[ould] answer the same questions for the numerous trusts in which they did not invest." *Ret Bd.*, 775 F.3d at 162. Unlike some of the class allegations in *NECA*, which could be proven by the evidence developed for the plaintiff's individual claims, the conduct in *Retirement Board* had to be proven "loan-by-loan and trust-by-trust" such that any evidence developed to prove plaintiff's individual claims would not tend to prove claims related to other loans and trusts. *Id.*

The key lesson from *NECA* and *Retirement Board* is that a "named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members," such that "the named plaintiff may properly assert claims on their behalf," when the proof the named plaintiff develops for his or her individual claims also tends to prove the class claims. *Id.* at 161. When the nature of the claims is such that the proof required for the individual claims does not tend to prove the class claims, then the "same set of concerns" is not implicated and a named plaintiff lacks class standing to litigate the class claims. *NECA*, 693 F.3d at 162 (citing *Gratz*, 539 U.S. at 267); *accord Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Industries Ltd.*, 3:17-CV-558 (SRU), 2020 WL 1181366, at *12 (D. Conn. Mar. 10, 2020) ("Whether a defendant's illegal conduct implicates the 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class depends on whether the Plaintiffs have 'a sufficiently personal and concrete stake in proving [those] other, related claims'" and a plaintiff has "such an interest if 'the proof contemplated for all of the claims [will] be sufficiently similar'") (citation

omitted); *Dezelan v. Voya Ret. Ins. and Annuity Co.*, 3:16-CV-1251, 2017 WL 2909714, at *8

(D. Conn. July 6, 2017) (no class standing because class claims require "different proof from

those [claims that plaintiff] brings on her own" so individual and class claims do not share same

set of concerns). And because the class standing requirement "derives from constitutional

standing principles" it is "distinct from the criteria that govern whether a named plaintiff is an

adequate class representative under Rule 23(a)." *Ret. Bd.*, 775 F.3d at 161.[3]

### B.    Application

Aetna argues that Curtis does not have class standing to bring class claims "concerning

forms of rehabilitation therapy for which [Curtis] never submitted claims for coverage." ECF

No. 64 at 1. Curtis responds to Aetna's motion by arguing that I should not consider class

standing until after he moves for class certification because a challenge to Curtis's "standing to

seek class relief . . . is not a basis for a motion to dismiss." ECF No. 68 at 12. Curtis then argues

that even if I consider class standing at this stage, he has standing to assert claims on behalf of

persons seeking medical services for which he never submitted claims for coverage. *See* ECF

---

[3] The Second Circuit has not been clear about whether courts should evaluate class standing challenges under Rule 12(b)(1), which governs jurisdictional challenges, or Rule 12(b)(6), which governs challenges to the adequacy of the pleading of a cause of action. In *NECA*, the Second Circuit reviewed the district court's decision to grant a motion to dismiss that had been brought under both provisions. *See NECA*, 693 F.3d at 155; *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 743 F. Supp. 2d 288, 289 (S.D.N.Y. 2010), *vacated*, 693 F.3d 145 (2d Cir. 2012) (describing motion to dismiss brought under "Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim."). And the district court's decision on the motion to dismiss invoked the legal standards for both provisions, *see id.* at 290, an ambiguity the Second Circuit did not address because it considered both the class standing issue and whether the complaint adequately pled a violation of a securities statute. *See NECA*, 693 F.3d at 166. The *Retirement Board* court also did not address which provision of Rule 12 governs class standing, *see Ret Bd.*, 775 F.3d at 159, but stated that the standard was the same under either provision when the challenge was directed at the complaint, *id.* (noting that under Rule 12(b)(6), a court must accept "the complaint's factual allegations as true" and draw "all reasonable inferences in Plaintiffs' favor," and that these "same standards apply to dismissals for lack of standing pursuant to Rule 12(b)(1) where . . . the district court base[s] its decision solely on the complaint's allegations."). As Aetna challenges class standing based on the allegations in Curtis's complaint, and my decision is based only on the complaint's allegations (and documents incorporated in the complaint by reference and attached to the defendant's brief), the standard is thus the same under Rule 12(b)(1) or 12(b)(6). I apply that standard in this decision.

No. 68 at 16-20. I first address whether Curtis has class standing to bring the class claims challenged by Aetna before addressing Curtis's argument about timing.

### 1.    Curtis's Class Standing

Aetna argues that Curtis "lacks class standing because his individual claims relating to physical therapy ('PT') services do not implicate the same set of concerns as the class claims relating to different types of medical services," ECF No. 64 at 1. Curtis disputes this, arguing that his claims are not "so different from the claims of [his] would-be class members," ECF No. 68 at 16 (emphasis and citation omitted), and that "each beneficiary of a plan administered by Aetna who was denied benefits for therapy services as not medically necessary has the same stake in litigating whether Aetna violated ERISA," *id.* at 18. Curtis also claims that he has class standing because he challenges "general practices which affect all of the plans." *Id.* at 17.

Like the class allegations dismissed in *NECA* and *Retirement Board*, the class allegations challenged by Aetna depend on different evidence than the evidence Curtis will need to prove his individual claim. Curtis alleges that Aetna unlawfully denied "Mr. Curtis's and the other Plans' members claims for benefits for . . . therapy services . . . based on the definitions of 'medically necessary' contained in Aetna's CPBs." ECF No. 54 ¶ 42d. To prove this allegation, Curtis must show that the CPBs "impose requirements for determining whether the various forms of therapy addressed in the CPBs are medically necessary not set forth in the Plans' definition" or that the CPBs "interpret the Plans' definition of 'medically necessary' in a manner inconsistent with its plain words." *Id.* ¶ 43b (Curtis listing this as question common to all members of the putative class). As shown below, this can only be done CPB by CPB.

The Plans share a definition of medically necessary treatment as treatment that "a provider exercising prudent clinical judgment, would provide . . . [i]n accordance with generally

accepted standards of medical practice" where the treatment is "[c]linically appropriate . . . for the patient's illness, injury, or disease . . . [and] not primarily for the convenience of the patient, physician, or other health care provider." *Id.* ¶ 15. The Plans define generally accepted standards of medical practice as standards that "are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community" and "[c]onsistent with the standards set forth in policy issues involving clinical judgment." *Id.* Curtis will thus need to offer proof about peer-reviewed medical evidence in the relevant medical community and prudent clinical judgment for each therapy governed by a challenged CPB to show that the challenged CPB is inconsistent with the Plans' medical necessity definition.

The required medical evidence will be different for each CPB because each governs a different kind of therapy, contains different limitations on medical necessity, and interacts differently with the Plans' definition of medical necessity. *E.g.,* ECF No. 54 ¶ 21 (CPB 243 (speech therapy) states that therapy is medically necessary if it will cause significant improvement within a "predictable period of time," whereas CPB 32 governing pulmonary rehabilitation therapy does not impose a time limitation but states that therapy is not medically necessary where "there is a plateau in patient's progress toward goals, such that there is minimal or no potential for further substantial progress"). And as Aetna notes, Curtis will likely have to rely on distinct expert witnesses to prove that the standards in each CPB depart from accepted medical practice (and thus the Plans' definition of medical necessity) in the field addressed by that CPB. ECF No. 65 at 29-30 (Aetna arguing that Curtis "has already acknowledged that his case will involve expert testimony concerning his CPB 325 claim, as well as five different disciplines other than [physical therapy] . . . necessitat[ing] at least six experts on [Curtis's] side"). Curtis fails to address this point in his brief opposing Aetna's motion. *See* ECF No. 68.

As in *Retirement Board*, Curtis will have to prove CPB-by-CPB that the CPB medical necessity definitions conflict with the Plans' definition because each challenge will require its own distinct medical evidence, including expert testimony.

In his individual claim, by contrast, Curtis will need only to develop evidence that there is a conflict between the Plans' medical necessity definition and CPB 325, which governs the physical therapy benefit for which Curtis sought coverage. *See id.* ¶ 4 (in individual claim, Curtis challenges only CPB 325, alleging it imposes limitations "contrary to accepted medical standards for when physical therapy is medically warranted"); *id.* ¶ 26 (pleading that Aetna's use of CPB 325 conflicts with "generally-accepted standards of care" for physical therapy). But Curtis's evidence about the circumstances in which physical therapy is medically necessary — including expert testimony about scientific evidence published in peer-reviewed medical literature and its application to treatment determinations by medical professionals in the relevant field — will not tend to prove class claims related to other kinds of therapies. In short, "the proof contemplated" for Curtis's individual claim is not similar enough to the proof required for the challenged class claims. *Ret. Bd.*, 775 F.3d at 161.

Curtis has "a sufficiently personal and concrete stake" to litigate the class claims for the physical therapy benefit because he was denied coverage for that benefit. *Id.* at 163. But even when I accept his allegations as true, there is "no way in which answering" questions about Curtis's individual physical therapy claim "w[ould] answer the same questions for the numerous [therapies]" he did not receive, and so the evidence Curtis must develop for his individual claim does not tend to prove the challenged class claims. *Id.* at 162. The *NECA* test aims at ensuring that "the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members [such] that the named plaintiff may properly assert claims on their behalf." *Id.* at

161. Curtis's individual claim gives him no incentive to develop the medical evidence necessary to prove class allegations about *different* therapies for which he was never denied coverage. Curtis thus lacks class standing to pursue the class claims challenged by Aetna because the allegedly unlawful conduct in his individual claim does not depend on the same proof as the conduct in the challenged class claims. The claims related to the different CPBs do not implicate the "same set of concerns" as Curtis's individual claims. *NECA*, 693 F.2d at 162.

Further, even if Curtis is correct that he is challenging "general practices which affect all of the plans," ECF No. 68 at 17, that is insufficient under *NECA* and *Retirement Board*, because, as shown, he lacks incentive to develop the proof necessary to prove the class claims. In the cases from this Circuit cited by Curtis, courts found that plaintiffs challenging general practices had class standing only after engaging in the *NECA* analysis and determining that the claims were provable by similar evidence. *See, e.g.*, *Beach v. JPMorgan Chase Bank, Natl. Assn.*, 17-CV-563 (JMF), 2019 WL 2428631, at *5 (S.D.N.Y. June 11, 2019) ("the claims involve similar inquiries and proof"); *Neufeld v. Cigna Health and Life Ins. Co.*, 3:17-CV-01693-WWE, 2018 WL 4158377, at *9 (D. Conn. Aug. 30, 2018) (the claims were "susceptible to similar generalized proof"). Class standing does not exist even when Curtis's challenges "[v]iewed at a high level . . . raise similar *questions*" if "the evidence that [Curtis] will have to put forward to establish liability will vary" for each CPB and Curtis's "ability to establish liability as to decisions made in connection with one [CPB] will do little to advance [his] case for liability as to other [CPBs]." *Patterson v. Morgan Stanley*, 16-CV-6568 (RJS), 2019 WL 4934834, at *6 (S.D.N.Y. Oct. 7, 2019) (emphasis in original).

Finally, although Curtis might be able to "offer[] evidence concerning whether [Aetna's other CPBs contradict the Plans]," "[t]he fact that it would be possible for a plaintiff to litigate a

18

given claim plainly does not imply that []he should be the one to litigate it." *Ret. Bd.*, 775 F.3d at 163. Because Curtis does not have class standing for the claims challenged by Aetna, I must dismiss them.

### 2.    Timing

As noted, Curtis also argues that "once a plaintiff has established standing to pursue his own claims, whether or not he may represent the claims of other yet-to-be-identified class members is a question to be addressed at the class certification stage." ECF No. 68 at 12. That is not the law in the Second Circuit, however, and so I will not wait to apply my class standing analysis to this case.

In the Second Circuit, a plaintiff's "standing to assert claims on others' behalf is an inquiry separate from its ability to represent the interests of absent class members under Fed.R.Civ.P. Rule 23(a)." *NECA*, 693 F.3d at 158 n.9; *accord Ret. Bd.*, 775 F.3d at 161 ("*NECA*'s two-part test, which derives from constitutional standing principles, is thus distinct from the criteria that govern whether a named plaintiff is an adequate class representative under Rule 23(a)") (citation omitted). Curtis claims that "whether a plaintiff has standing to bring a class action on behalf of unnamed, yet-to-be identified class members 'is a question of predominance under Rule 23(b)(3), not a question of standing under Article III.'" ECF No. 68 at 14 (citing *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018)). This squarely contradicts the above-quoted language from *NECA.* And *Langan* does not support his position. *Langan*, which involved whether unfair trade practice claims arising under the laws of twenty states could be properly asserted in a class action by a single plaintiff from one of those states, recognized that "[a]t some point … a named plaintiff's claims can be so different from the claims of his putative class members that they present an issue not of the

prudence of certifying a class under Rule 23 but of constitutional standing." 897 F.3d at 94. *Langan* applied that principle solely to the question before it, i.e., "whether there is a standing problem when a plaintiff attempts to sue on behalf of those who may have claims under different states' laws that generally prohibit the same conduct," *id.* at 95, and ultimately concluded that there was not, stating — in a sentence containing the entire quotation of which Curtis quotes only the part mentioned above — that "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III." *Id.* at 96. But this case involves factual differences, not legal differences, between the named plaintiff and the absent class members, and so it is more like *NECA* and *Retirement Bd.* and less like *Langan*. Here, Curtis seeks to bring a class action under a single federal law, ERISA. The issue is whether Curtis's individual claim based on Aetna's allegedly unlawful conduct in processing his physical therapy claims implicates the same set of concerns, i.e., depends on sufficiently similar proof, as class claims arising from Aetna's handling of claims for other therapies that Curtis did not receive. In *Langan,* by contrast*,* the proof at issue would be the same across the twenty states and would focus on whether the defendant used deceptive labeling in a nationwide market for baby products.

Curtis also relies on *Fallick*, a case from the Sixth Circuit decided in 1998, several years before *NECA* and *Gratz*, 539 U.S. 244 (2003). *See* ECF No. 68 at 14 (citing *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)). Because *Fallick* is not binding on me, and contradicts later decisions that are, I decline to follow it.

Because class standing is distinct from whether the named plaintiff is an adequate class representative under Rule 23, I need not wait until Curtis files a motion for class certification to analyze class standing. *See Ret. Bd.*, 775 F.3d at 163 (Second Circuit affirming district court's

dismissal of certain claims for lack of class standing in response to a motion filed under Rules 12(b)(1) and 12(b)(6)). Curtis also contends that "courts in this Circuit consistently refuse to address whether the named plaintiffs' injuries are sufficiently similar to those of putative class members . . . until the class certification stage." ECF No. 68 at 14. But courts in this Circuit are not consistent in when they choose to analyze class standing. Several courts have considered class standing issues at the motion to dismiss stage. *See, e.g., Fletcher v. ConvergEx Group LLC*, 388 F. Supp. 3d 293, 296-97 (S.D.N.Y. 2019) (noting that "some courts in this district have deferred the issue of class standing until class certification, others have addressed it on a motion to dismiss" and granting motion to dismiss on class standing grounds in ERISA case when plaintiff argued that "consideration of [plaintiff's] class standing should be deferred until the class certification stage"); *Patterson v. Morgan Stanley*, 16-CV-6568 (RJS), 2019 WL 4934834, at *6-*7 (S.D.N.Y. Oct. 7, 2019) (granting motion to dismiss certain class claims in ERISA case on class standing grounds); *Dezelan v. Voya Ret. Ins. and Annuity Co*., 3:16-CV-1251, 2017 WL 2909714, at *7-*8 (D. Conn. July 6, 2017) (same).

Finally, Curtis argues that I should wait to consider class standing until he has used "class discovery to establish . . . the terms of plans . . . [and] the extent to which Aetna uses CPBs to improperly add non-plan requirements and restrictions in denying claims for benefits covering therapies other than physical therapy." ECF No. 68 at 15. One purpose of the class standing test, however, is to ensure that the named plaintiff has "the right incentives" to develop the "proof contemplated for all of the claims." *Ret Bd.*, 775 F.3d at 161. As shown, Curtis does not, and so it would not be helpful to launch class discovery as to Aetna's handling of claims for therapies Curtis did not receive before deciding whether Curtis has standing to advance claims related to those therapies. Nor would it be consistent with the Court's and the parties' obligation to "secure

21

the just, speedy, and *inexpensive* determination of [the] action," Fed. R. Civ. P. 1 (emphasis added), as unleashing discovery on claims the plaintiff lacks standing to litigate would waste time and resources.

## III.    CONCLUSION

For the reasons above, I grant the motion to dismiss (ECF No. 64) Curtis's class claims concerning speech therapy, pulmonary rehabilitation therapy, cognitive rehabilitation therapy, occupational therapy, and voice therapy.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        January 4, 2023